Maria A. Tate, Respondent, v. The Citizens Savings Bank of Cabool, Missouri, a Corporation, and S. L. Cantley, Commissioner of Finance of State of Missouri, in Charge of Said Citizens' Savings Bank of Cabool for the Purpose of Liquidation, Appellant.[*]

Springfield Court of Appeals. Opinion filed October 26, 1929.

[*]Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2647, p. 726, n. 17; section 2868, p. 898, n. 86; Vendor and Purchaser, 39Cyc, p. 1842, n. 79; p. 1869, n. 85.

*Farrington & Curtis* and *D. E. Moberly* for appellant.

*Hiett, Lamar & Covert* for respondent.

SMITH, J.—This is a suit in which the plaintiff sued for the sum of $510.50 which she alleged was the balance due her on the purchase price of a lot or tract of land located in Cabool, Missouri, which she had sold to the Citizens Savings Bank of Cabool. She alleged that she had filed her claim for this amount with the Commissioner of Finance within the time allowed by law for filing claims, and that the same had been duly allowed by the Commissioner. In her petition, in addition to the prayer for judgment for that amount, she asked, "That the judgment for the same be made a special lien upon said premises and that a special execution be issued therefor, and such other and further relief as to the court seems just and proper in the premises."

The answer filed was a general denial and with the other allegations of defense as set out in the answer as follows:

"Admits that said Citizens Savings Bank of Cabool failed and closed its doors on the 17th day of March, 1927, and that said bank is now in the hands of the defendant, S. L. Cantley, Commissioner of Finance of this State for the purpose of liquidation.

"Defendants deny that said bank is indebted to plaintiff in any sum on account of unpaid purchase price of land described in plaintiff's petition and allege that said real estate was fully paid for at the time of the purchase thereof from plaintiff.

"Defendants further answering and as a special defense to plaintiff's cause of action allege that said Citizens Savings Bank of Cabool, Missouri, failed and closed its doors on the 17th of March, 1927, as aforesaid; that immediately thereafter all the assets of said bank were placed in the hands of S. L. Cantley, Commissioner of Finance for the purpose of liquidation under the laws of this State relating to insolvent banks.

"That thereafter due notice of such fact was given plaintiff and all creditors of said bank as required by law and that August 31, 1927, was fixed by the defendant, S. L. Cantley, as the last date for filing claims, said date being more than four months after the date of the first notice to creditors; that notice thereof was duly given to all creditors of said bank including the plaintiff herein.

"That notwithstanding said facts the plaintiff failed to file with the Commissioner of Finance in charge of said bank, the claim on which this suit is based, within the time specified as above and as required by section 11716, Revised Statutes 1919, of the State of Missouri and never at any time filed any such claim with the Commissioner of Finance in charge of said bank, the suit in question being the first notice of such claim.

"That by virtue of section 11716 aforesaid every claim must be filed with the Finance Commissioner within the time fixed for filing claims as provided by said section and that no suit can be maintained against said bank, unless such claim was filed as therein provided and the same was disallowed by the Commissioner, and brought within six months thereafter as provided by section 11720, Revised Statutes 1919. That by reason of said section the last day for filing suit on any claim filed against said bank would have been March 1, 1928; that this action was not commenced until the 30th day of April, 1928.

"Wherefore, defendants say that by reason of the aforesaid provisions of Article 1, Chapter 108, Revised Statutes 1919, of the State of Missouri, the claim of plaintiff is barred and that because thereof this action cannot be heard or maintained.

"Defendants further say that when said bank closed it owed the plaintiff on account of a demand deposit in her favor in said bank the sum of $35; that it owed on account of a time deposit in her favor in said bank the sum of $450 together with interest thereon in the sum of $12.75; that on the 22nd day of June, 1927, plaintiff filed her claim with the defendant, S. L. Cantley, as a general creditor as to each of the above items and the same were thereafter, to-wit, on the 22nd day of October, 1927, allowed by said Commissioner as general claims against said bank. That if said amount of indebtedness bears any relation to the claim of plaintiff in this suit she has long since elected to proceed against said bank as a general creditor, on a claim which makes no reference to the claim now made and that by reason of said election of remedy she is now barred from proceeding with the claim here sued upon.

"Further answering defendants say that plaintiff sold the land in question to defendant in the month of July, 1925; that plaintiff took no steps to enforce her lien now claimed until the filing of this suit, nor gave notice thereof; that the rights of numerous persons now creditors of said Citizens Savings Bank of Cabool have intervened since said time; that they had no notice of such claim of plaintiff; that plaintiff has been guilty of laches in presenting and enforcing said claim and is estopped from now asserting same and that it would be inequitable to the creditors of said bank to now permit her to have said claim of a vendor's lien established."

For reply the plaintiff denied each and every allegation in the answer contained.

The plaintiff's contention is that this is not an independent action but is a plenary action filed in the circuit court in aid of and auxiliary to the claims which had already been filed before the Commissioner of Finance and which had been by him allowed and presented to the circuit court to be by the circuit court disposed of according to the provisions of section 11722, Revised Statutes 1919, and that these claims having been allowed by the Commissioner and presented to the circuit

court, were pending in the circuit court awaiting its action at the time this action of plaintiff was filed. The plaintiff contends that her petition shows this to be true; that after setting out the facts it would entitle the plaintiff to the equitable relief prayed, that is, to a lien on the lot in Cabool for the unpaid purchase price. The petition states the claims which were the basis of the action were duly filed with the Commissioner of finance within the time required by law and that the same were duly allowed by the Commissioner in the sum of $510.50, and the petition then prayed for a judgment for the identical sum allowed by the Commissioner and asked that such judgment be made a special lien on the real estate.

On the 8th day of June, 1928, the cause was presented to the court and the following judgment rendered:

"Now on this day, this cause coming on to be heard, the plaintiff appears in person and by counsel and the defendant appears by counsel and announces ready for trial, and this cause being submitted to the court on the pleadings and evidence adduced, and the court having seen and heard the same, and being fully advised in the premises, doth find the defendant, The Citizens' Savings Bank, before it went into the hands of the defendant, S. L. Cantley, for liquidation, purchased from plaintiff a house and lot in the city of Cabool, county of Texas, State of Missouri, described as follows, to-wit: Lot Thirteen (13), Block Three (3), Garst's second Addition; that at the time the said bank went into the hands of the said S. L. Cantley for liquidation, that there remained unpaid on the purchase price of said lot the sum of five hundred ten and 50/100 ($510.50) dollars.

"Wherefore, it is considered ordered, and adjudged by the court that the plaintiff recover of the defendant the sum of five hundred ten and 50/100 ($510.50) dollars, and that the same be a lien on said lot, and that a special execution be issued against the same for the said sum of five hundred ten and 50/100 ($510.50) dollars, and the plaintiff's costs herein laid out and expended."

Motion for new trial was filed, overruled, and appeal properly taken to this court.

The facts in this case as shown by the evidence are fairly set out by the defendants statement which is as follows:

"Defendant, Citizens' Savings Bank of Cabool, carried on a banking business at Cabool, Texas county, Missouri, until the 17th day of March, 1927, on which date it failed and has since said date been in the possession of the Finance Department of the State for liquidation.

"Notice was given by the agent in charge of said bank fixing August 31, 1927, as the last day for filing claims against this bank pursuant to section 11716, Revised Statutes 1919, and plaintiff received such notice.

"The records of the bank disclosed plaintiff had two accounts therein, one a time certificate dated August 23, 1926, in the sum of $450 due twelve months after date, with interest at five per cent; the other was a checking account in her name in the sum of $35.

On the 24th of June, 1927, plaintiff filed two claims with the agent in charge of said bank, one in the sum of $462.75, based on the aforesaid time certificate, which included the interest due thereon, and the other in the sum of $35 based on the demand deposit aforesaid, which said claims are Plaintiff's Exhibits "B" and "C," and shown in abstract of record. Both claims were filed as general claims only and no mention of preference or assertion of vendor's lien was contained in either. Both claims were thereafter duly allowed by the Commissioner as provable general claims against said bank.

"On the 30th of April, 1928, plaintiff filed this action claiming that the bank had purchased certain real estate of plaintiff and that it had failed to pay for same and asserting a lien therefor.

"The defendant answered by denying that there was any unpaid balance on the purchase price of said real estate, alleging the consideration therefor had been fully paid and pleaded further that said action was barred, in that no claim had been filed or suit brought within the time fixed by the Commissioner for filing claims as provided by sections 11716 and 11720, Revised Statutes, 1919; and further pleaded that by filing her claims with the Commissioner for the deposit claims she had elected to treat the land as fully paid for and by reason thereof was estopped from now asserting a vendor's lien. To this answer the plaintiff replied by general denial.

"There was but one issue of fact on which evidence was offered and that was touching the sale of the real estate. There was but little conflict in the testimony of the witnesses for plaintiff and defendant on this issue.

"The evidence shows that plaintiff is the widow of one W. B. Tate, who died in 1923. At the time of his death he owed defendant bank $108 and also owed the Cabool State Bank $150. Plaintiff owned a house and lot in Cabool. In July, 1925, she sold this house and lot to defendant bank for $900, with the understanding that the indebtedness of her husband should be paid out of the proceeds. Plaintiff testified it was a cash deal; that her husband's note was deducted from the purchase price; that the bank also paid the $150 to the Cabool State Bank; that the remainder was due her in cash. She further testified that she was under no agreement with the bank as to depositing the balance; that the officers of the bank merely solicited that she make a deposit with this balance and that she did so; that it was not compulsory that she do so. She further testified that she put $500 on time deposit for one year and the balance to her checking account. At the end of the year she had checked out the checking account and the bank had honored a small check of $15,

for which she had no funds subject to check. In August, 1926, she presented the original certificate to the bank and collected the interest thereon. She then redeposited $450 on time deposit for another year and placed the remainder in a demand account. The bank closed before the certificate matured and it was this time certificate and demand deposit on which claims were filed with the Commissioner as aforesaid.

"Plaintiff testified that when the last deposit was made, she knew she could have collected her money, but again on request or solicitation of the bank officers, she redeposited this money and that it was a voluntary action on her part. She further stated that she never gave any notice of claim of a lien until this suit was filed, which was almost three years after the sale.

"It was further shown that at the time of the purchase the bank had on hands sufficient cash to have paid for same and that the same was true in August, 1926, when the last deposits were made. It was further shown that there had been a shifting of accounts in the bank after this sale and that new creditors of the bank were made after that time.

"On this showing the trial court found the issues for the plaintiff in the sum of $510, finding that this sum was an unpaid balance on the purchase price of said house and adjudged the same to be a lien thereon. From this judgment defendant appeals."

The defendants base their contention for reversal of this case upon the following assignment of error as printed in their brief:

"1. The court erred in overruling the objection of defendant to the introduction of any evidence in the cause as the petition of plaintiff failed to state facts constituting a cause of action against the insolvent bank.

"2. The court erred in finding that defendant bank owed plaintiff any sum as a part of the purchase price of the real estate in question as there was no evidence on which such a finding could be based.

"3. The court erred in holding that the action was not barred under statutes of this State relating to liquidation of insolvent banks.

"4. The court erred in holding that plaintiff had not made an election of remedy and that she was not estopped to pursue the present action.

"5. The judgment is for the wrong party on the facts as disclosed by the record."

This is a suit in equity and is therefore triable here *de novo*, and this court, regardless of the finding of facts of the trial court must in accordance with equitable procedure determine the facts. Due deference, however, should be accorded to the determination of the chancellor. [Canty v. Halpin, 294 Mo. 118, 242 S. W. 97; Swartzman v. Fire Insurance Co., 2 S. W. (2d) 593; Johnson v. Autry, 5 S. W. (2d) 405, 407.]

We think no error was committed by the chancellor in overruling the objection of the defendant to the introduction of evidence. The petition stated sufficient facts to constitute a cause of action. It alleged the sale of the property with the balance due on the purchase price; the failure of the bank, with the taking charge thereof by the Commissioner of Finance; the allegation of filing claims for said balance with the Commissioner, and his approval thereof, and the prayer that the approved claim be allowed as a judgment and that said judgment be made a special lien on the property sold and that a special execution be issued therefor, and for such further relief as seems to the court just and proper.

Under a consideration of the second and fifth assignments of error we are brought to the consideration of the evidence to determine the soundness of the trial court's findings. Mrs. Maria A. Tate testified that her husband died in 1923, and in August, 1925, she sold her property to the Citizens' Savings Bank for $900; that the bank held the note which her husband signed for $108 and that it was part of the agreement that this note should be paid and that it was taken out of the $900; that in addition to the $108 which her husband owed that bank he also owed $150 to another bank in Cabool and that was paid and a receipt therefor given to her.

In Mrs. Tate's testimony as shown by defendant's abstract of the record, we find this statement: "They made the contract this way, if I sold them the property that I would deposit the money in the bank there for one year. They gave me the deposit slip to show that." This deposit slip was given in 1925 at the time of the sale and renewed a year later by paying the interest due and giving another time deposit slip which second deposit slip she held at the time the bank closed. On cross-examination she testified that it was a cash deal and that she was to get $900 in cash, they were to deduct the $108 which her husband owed that bank and were to pay $150 he owed to the other bank and that she deposited $500 on a year's time and $50 on a checking account and redeposited it a year later and did not try to collect it. The following question was submitted with its answer: "Q. You did not need it and then agreed to deposit it for another year? A. No, I just deposited it. I was to leave it there and to get the interest off of it. I had perfect confidence I would get it later. It was all I had and I wanted to be sure of it. I just voluntarily deposited it and did not demand payment at that time." She testified that the first dealings in connection with the sale was had with Mr. Clint Johnson, an officer of the bank, at the Trevor Hotel, and that the deal was finally consummated with Mr. Yates at the bank. And we find these questions and answers:

"Q. And who requested that you leave that much there for a year? A. For a year?

"Q. Yes. A. Well, he said it was all right if I left it there, if I was going to bank it anywhere just as well leave it with him.

"Q. You didn't have to leave it there? A. No, sure I didn't.

"Q. But after the deal was completed, he requested you to take a time certificate for it? A. Yes, sir.

"Q. And you consented to do that? A. Yes, sir.

"Q. But the trade wasn't made on condition that you had to leave the money on deposit, was it? A. Well, in some respects it was. Well, of course, it wasn't compulsory that I do it. He insisted that I would pay off the old note and have the cash left in there.

"Q. And have the cash for the balance? A. Yes.

"Q. Did you trade your land to him on condition that you must leave the money there, or did that occur after you made the trade, that he requested you to leave the money there? A. Well, I couldn't state about that. I couldn't be positive whether it was after we had closed the deal, I am not sure on that.

"Q. You do recall that he solicited the account? A. Yes, he rather intimated that it was compulsory that I pay that debt, but I didn't owe it.

"Q. Was it compulsory that you deposit the balance with him, or did he just merely request it? A. I think he just requested it.

"Q. That you deposit the rest with him? A. Yes; sir."

She testified that she never received the money at the time the deal was made but only the deposit slip, that at the time the first deposit slip became due she did not receive the money but only received a new deposit slip.

J. W. Dickerson, a brother of the plaintiff, testified that he had talked with Mr. Clint Johnson about the matter and that Johnson said the bank would likely buy the property; that the deal was finally made through Mr. Steve Yates and this question was asked him and answered as follows: "Q. Just state what Steve Yates said about leaving the money there for a year? A. Well, he asked her before he had arrived at a conclusion with her if she figured on redepositing, or something to that effect, and she said for the time being I would like to deposit it on time, that is, a good heavy per cent of the proceeds of the property, and some current expenses. And when she said that he said, 'Now here, I will just take this property off your hands.' "

For the defendants, Clint Johnson testified that he handled the negotiations for the sale and got the parties together, and got them together on the price, but did not handle the consummation of the deal; that he submitted to Mr. Yates the price agreed upon and Mr. Yates told him to bring the lady in, and he brought Mrs. Tate to Mr. Yates but did not hear the conversation between them; that nothing was ever said between him and J. W. Dickerson or Mrs. Tate about how the balance was to be paid after the notes were paid and

he did not know what the deal was between Mr. Yates and Mrs. Tate or how she came to take the certificate of deposit; that he was in the bank on the day the deed was made but did not handle the transaction that day. The trial court asked him this question:

"Were they paid any cash on this land or do you know how this land was paid for?" and this is his answer: "A! Well, my recollection is they paid them the cash or went over and paid the other note off in the bank, I don't know how that was, anyway that was cash, I suppose, and my recollection is they took a checking account and time deposit, but the exact figures I cannot remember, I don't know whether they paid the $500 in money that is represented by this certificate of deposit to Mrs. Tate or not."

Mr. Yates, the officer of the bank who finally consummated the deal, testified that Mr. Johnson handled the negotiation whereby the purchase price was agreed upon at $900 and the amount of the indebtedness to be deducted from that price, and he said, "We figured up what was to go to the other bank and figured up what they owed us, and the balance was due her. I do not remember the figures now, but she took some money and the balance was put on time deposit. Q. State what was said about the time deposit if you recall. A. I do not remember exactly . . . there was nothing said in any way about the transaction except they were to have the cash less what they owed us. Q. Just tell what was said. A. Well, the substance would be that we were to pay the other bank and take out what she owed us, and the balance of the purchase price was to go to her in any way she wanted it. She took some cash, I think it was $500 for time deposit. I really do not remember how the time deposit happened to be made. I do not know whether I asked her to leave it there or whether they brought it up themselves." He testified at another time that there was no condition in the deal that $500 or any part of it must be left there. He further said that he probably asked her to leave the money there on time deposit as that was the customary bank transaction. On cross-examination he said he did not remember whether he asked her to leave the money there on time deposit or not. He may have solicited the deposit. She never said anything about the deposit being a lien upon the property. He could not say whether or not he counted out the $500 at the time the transaction was made. In fact the memory of this witness was apparently bad on several material points at issue.

The testimony shows this state of facts: Mrs. Tate sold her property and did not receive all the money. She said, "They made the contract this way, if I sold them the property that I would deposit the money in the bank there, for one year which I did." This statement is corroborated by her brother and is not emphatically denied by the officer of the bank who made the deal. One of them on that point said, "I do not know what the deal was between Mr. Yates

and her, nor how she came to take the certificate of deposit.'' And Mr. Yates answering said, ''I really do not remember how the time deposit happened to be made.'' The certificate of time deposit and not the money was taken by the plaintiff. The defendants contend that the transaction was equivalent to the payment of cash. We think the testimony does not show so. If the bank had paid her the cash when the deal was made, and she had of her own accord redeposited it, there would have been no question but that the lien did not attach. On the other hand, if the bank had given her a promissory note for the balance of the purchase price, there would be no question but that the lien would attach, and that would be true even though the note had been renewed. But neither of these contentions happened. She said it was one of the conditions of the sale that the money was to remain there on deposit for one year. She is corroborated in this by her brother, and the further fact that the deed was delivered and the money not paid to her; that the time certificate was delivered to her and never paid. Can this be considered a payment of the purchase price? Or is it equivalent to giving to her a note for the payment of the purchase price? Under the facts as we get them from the record, we are forced to reach the conclusion that this deposit certificate was nothing more or less than an evidence of debt due to the plaintiff for the purchase price of her property. [Little River Drainage District v. Cantley, 2 S. W. (2d) 607, 611; Bank v. Harrison, 12 S. W. (2d) 755, 757.] We think the evidence is amply sufficient to sustain such a judgment. We are not unmindful of the fact that the testimony is controverted on some of the issues, yet we think the plaintiff has shown by a preponderance of the testimony the justness of her claim. In this case we have deferred somewhat to the finding of the chancellor as we think we have authority to do. We are following our Supreme Court in the case of Keener v. Williams, 307 Mo. 682, 705, 271 S. W. 489, where the writer of that opinion used this language:

''The suit was tried as one in equity before the court *nisi*. While this court has said that the whole record must come here for review in equity cases so that we may weigh and decide the same *de novo*, nevertheless where an issue of fact rests on the credibility of the witnesses, this court will usually defer to the finding of the chancellor who has many opportunities, necessarily denied to us, of seeing and hearing the witnesses themselves, observing their demeanor while testifying, and of determining the weight which properly attaches to their testimony. [Creamer v. Bivert, 214 Mo. 473.]''

Was this action barred under statutes of this State relating to liquidation of insolvent banks? We think it was not. The petition alleged that after the Commissioner of Finance took charge of the affairs of this bank, and within the time provided by law, the plain-

tiff filed her claim for the amount sued for herein and the same was duly allowed by the Commissioner (and this was admitted by defendants). And the plaintiff then prayed for judgment of the circuit court, for this same amount and asked for a special lien upon the property sold. It was admitted that the last day for filing claims was August 31, 1927. The testimony shows that the plaintiff filed her claims on June 24, 1927, several weeks prior to the last day for filing claims and the claims were approved by the Commissioner. Section 11718, Revised Statutes 1919, gives any party interested thirty days after the last filing day to file objection to claims, which would be up to September 30, 1927. Section 11719, Revised Statutes 1919, gives the Commissioner thirty days after that time to approve or reject claims, and this extended the time up to October 30, 1927. Six months from October 30, 1927, extended the time for filing suits in the circuit court up to and including April 30, 1928, and the suit of the plaintiff was filed in the circuit court on that day. Therefore, we think the action was not barred by the statute for it was filed within the limits fixed by the statute with reference to liquidating insolvent banks. [Bowersock, Mills & Power Co. v. Citizens' Trust Co., 298 S. W. 1049; Evans v. Peoples Bank of Meadville, 6 S. W. (2d) 655; Wood v. Gainsville Bank, 11 S. W. (2d) 56, 59.]

The defendants contend that the plaintiff should not be permitted to establish this lien because of the provision of section 11721, Revised Statutes 1919. This section reads as follows: "A lien shall not attach to any of the property or assets of such corporation or private banker by reason of the entry of any judgment recovered against such corporation or banker after the Commissioner has taken possession of its property and business and so long as such possession continues." We have not been cited to any opinions of the courts wherein this section of the statutes has been construed, nor have we found any, but we are of the opinion that it does not prohibit this kind of a proceeding. Under the general statutes any judgment of the circuit court becomes a lien upon the real property of the defendant, and we think this provision of the statute is intended to prevent any judgment creditor having any advantage over other claimants, by going into court and obtaining judgment, but we think it is not intended to cause a vendor to lose a lien that exists, because the court declares that such a lien does exist. The vendor's lien is the equitable right attaching to the property which Mrs. Tate sold to the bank and which was not paid for, and the lien did not depend for its existence upon an agreement between the bank and Mrs. Tate that it should exist. For the purchase money of land remaining unpaid the law presumes the existence of a vendor's lien, unless the terms of the contract or attending circumstances furnish satisfactory evidence that the parties did not intend the lien to be reserved, and

the burden of proving the waiver of the lien or that no lien was reserved is on the purchaser. [Eubank v. Finnel, 118 Mo. App. 535, 94 S. W. 591; Wilson v. Plutus Co., 174 Fed. 317; Majors v. Maxwell, 120 Mo. App. 281, 96 S. W. 731; Jones v. Rush, 156 Mo. 365, 57 S. W. 118; Furnish v. Brior, 282 S. W. 546, 547.]

It is our opinion that the lien in this instance does not attach by reason of the judgment rendered, but by reason of the sale of the real estate and the failure to pay the purchase price, and that such lien existed from the date of the sale and the failure to pay, and the decree of the court was nothing more than the finding that it did so exist, and since it did so exist it was just as effective as if the purchaser had given a deed of trust upon the property to secure the unpaid purchase money.

It is our opinion that there is no reversible error in the trial of the case and the judgment should be affirmed. It is so ordered. *Cox, P. J.*, and *Bailey, J.*, concur.