S. L. CANTLEY, Commissioner of Finance, and FRANK J. QUIGLEY, Special Deputy Commissioner in Charge of THE BANK OF BARNETT, Appellants, v. R. A. BEARD, J. E. BOAN, J. D. BRADSHAW, IVOR E. BRADSHAW, W. W. GILLUM, REU MILLER and MORGAN COUNTY.—98 S. W. (2d) 730.

Division One, November 12, 1936.

*R. M. Livesay, Frank J. Quigley* and *Mongomery, Martin & Montgomery* for appellants.

*G. Logan Marr, Arthur J. Bolinger* and *Roy D. Williams* for respondents.

BRADLEY, C.—This cause is in equity, commenced by the Commissioner of Finance and his deputy, to determine the interest of the parties plaintiff and defendant in certain notes and collections thereon. The notes, when made, were payable to the Bank of Barnett, Barnett, Missouri, Morgan County. Also, plaintiffs seek judgment against Morgan County for the amount collected on these notes and turned over to the treasurer of the county, and to enjoin the defendants from making further collections on the notes. The trial court found the issues in favor of the county and declared "a trust in favor of Morgan County against the notes and their proceeds." Motion for new trial was overruled and plaintiffs appealed. Commissioner Cantley's successor in office was substituted as party plaintiff, but the record here is styled as in the petition when filed and we leave it so.

The Bank of Barnett closed November 2nd, and was formally taken over by the Commissioner of Finance November 9,. 1931. Plaintiffs allege that on the — day of January, 1931, the Bank of Barnett was "designated by the county court of Morgan County," a depository of the county, and that thereafter, on March 20, 1931, the bank "qualified as such depository" by filing bond; that on March 24th the county deposited in said bank "as a county depository," the sum of $12,000, and that the individual defendants, directors and cashier of the bank, took out of the assets of the bank the notes in question, aggregating $12,000, "to secure themselves as sureties" upon the depository bond; that plaintiffs are entitled to recover possession of the notes and the proceeds therefrom. It is further alleged that since November 2, 1931, the individual defendants have collected on these notes approximately $6000 (amount shown $5405.88) and turned the money over to Morgan County; that under the law defendants held the notes and the collections thereon in trust for plaintiffs, and that because of the multiplicity of "suits that would be necessary to determine" the rights in these notes, plaintiffs sought the equity side of the court.

The individual defendants, after formal admissions, answered by general denial, and then allege that on the — day of January (March) 1931, the County Court of Morgan County, and defendant W. W. Gillum, acting for himself and the other individual defendants, "made a contract" with Morgan County by which contract, $12,200 county money "should be by the said defendants (individual) received from the county treasurer and by them invested in solvent notes" owned by the Bank of Barnett; that in pursuance of said alleged contract, $12,000 was, by the county treasurer, delivered to the individual defendants, and "that said funds were used to purchase (for the county) the notes" in question; that said notes and the proceeds therefrom "were held in trust . . . for the use of Morgan County;" that the $12,000 "did not go into and become a deposit in the Bank of Barnett, but was by said defendants (individual) invested in the notes;" that all the money collected on these notes by the individual defendants has been paid to the treasurer of Morgan County "in execution of the trust reposed." The prayer in the answer of the individual defendants is, in effect, that a trust be declared upon the notes and the collection thereon in favor of Morgan County.

Morgan County, after formal admissions, answered by general denial, and then alleges that on the — day of March, 1931, the county court and the directors of the Bank of Barnett, by its president, W. W. Gillum, and cashier, Ivor E. Bradshaw, "made and drew up a contract" with Morgan County "for the sum of $12,000 public monies belonging to Morgan County, Missouri, to be received, and was transmitted, transferred and given over to the Bank of Barnett

as (a) trust fund of the public monies of Morgan County, Missouri, to be deposited to the account of Morgan County;'' that the notes and their proceeds ''have been in the hands of the directors of the Bank of Barnett as trustees of a trust in behalf of and for Morgan County.'' The prayer in the answer of defendant county is ''that a trust be declared upon the said notes and the proceeds in favor'' of the county. Plaintiffs filed separate reply to the answer of the individual defendants and to the answer of the county.

The facts developed are about these. Shortly prior to March 2, 1931, Morgan County received from the Union Electric Light & Power Company, $126,575 as damages for the inundation of its public roads. At that time the Bank of Versailles and the First National Bank in Versailles were the duly selected and acting depositories of the county. March 2nd, there was filed in the county court, and entered on record that day, a *proposition* by the two depository banks, and four other banks, including the Bank of Barnett. This proposition pertained to the apportionment, between the banks named therein, of $100,000 of the money received by the county for the inundation of its roads. In the proposition it appears that the submitting banks agreed among themselves as to the portion of the $100,000 each would receive, and $12,000 was the amount the Bank of Barnett was to receive. The *proposition*, after a preliminary paragraph, is divided into divisions I, II and III. In division I the two depository banks released any claim they had to all of the $100,000 and consented that the apportionment might be made according to the percentages stated in division II. Division II recites that ''as between the undersigned banks as parties of the first part and the county court as parties of the second part,'' it was agreed that whatever sum was turned over to the banks concerned, the county treasurer would ''abide by the terms of Section 12188-1929.'' (This section has reference to the duty of the county treasurer to transfer to depository banks, when properly selected, the funds allotted to them.) Then follows, in division II, the percentages of the $100,000 to each of the six banks. Division III provides that the ''undersigned banks, and by their proper officers, shall execute to the State of Missouri and the County of Morgan bonds in kind as designated in Section 12187-1929 (pertaining to depository bonds), the same to be executed as provided in said section and approved by the county court of Morgan County, and this provision III is so taken and agreed on by and between the undersigned banks.''

The county court record of March 2nd recites that ''the above contract and agreement made between the Bank of Versailles and the First National Bank in Versailles, and the contract and agreement made between the county court of Morgan County and the above named banks in part III was examined and approved by the county court.''

March 20th all individual defendants, except Miller, executed a bond to Morgan County in the sum of $40,000, conditioned "that whereas, the said Bank of Barnett was, on the — day of ——, 1931, duly selected by the county court of Morgan County, Missouri, as the depository of twelve per cent of the funds of said county. Now, therefore, if the said Bank of Barnett and sureties shall faithfully perform all of the duties and obligations and pay upon presentation all checks drawn upon said depository by the proper officers of said county any funds in said depository, pay all interest promptly, and faithfully keep and account for all said funds according to law, then this obligation to be void, otherwise to remain in full force and effect." The bond was not signed by the Bank of Barnett. On the back of the bond is the endorsement: "No. 123. Approved March 20, 1931. Filed Mar. 20, '31, F. W. Zwanzig, County Clerk" March 20th, same day the bond was approved, the county treasurer issued his treasurer's check, drawn on the First National Bank in Versailles (a depository of the county) for $12,000, payable to the order of the Bank of Barnett. This check was delivered in Versailles to defendant, Ivor E. Bradshaw, cashier of the Bank of Barnett, according to his evidence. He endorsed the check, for his bank, to the First National Bank in Versailles (correspondent of the Bank of Barnett) and it was deposited there to the credit of the Bank of Barnett.

Cashier Bradshaw, as we interpret, some time between a date in April, not given, and May 15th, sent, or in person delivered, to the county treasurer a "bank book" showing "the entry of the $12,000 deposit to the account of Morgan County." The original of this book was lost, but a copy thereof was introduced by plaintiffs. This book shows the deposit of the $12,000, and then an interest deposit in April, day not given, of $10, and interest deposits thereafter as follows: May 15th, $3.34; June 3rd, $10.34; July 2nd, 10; August 4th, $13.84; September 9th, $11.84; October 6th, $10.50; total, $12,069.86. Also, this bank book shows (under the caption, "Paid in by Ivor E. Bradshaw and J. E. Bowen (Boan)," that, beginning November 7, 1931, and up to and including March 7, 1932, there was paid to the county treasurer by the cashier and Boan, from collections on these notes, the sum of $5405.88.

The entry is as follows:

"Paid in by Ivor E. Bradshaw & J. E. Bowen (Boan).

| | | | | |
|---|---|---|---|---|
| Nov. | 7 | Pd. in | ............................ | $ 2,068.82 |
| Nov. | 21 | " " | ............................ | 458.24 |
| " | " | " " | ............................ | 303.85 |
| Dec. | 8 | " " | ............................ | 238.70 |
| " | 22 | " " | ............................ | 80.93 |
| " | 24 | " " | ............................ | 805.50 |
| " | 29 | " " | ............................ | 604.57 |

| | | | | | |
|---|---|---|---|---|---|
| Jan. | 2 | ,, | ,, | .............................. | 200.00 |
| ,, | 7 | ,, | ,, | .............................. | 156.20 |
| ,, | 25 | ,, | ,, | .............................. | 21.70 |
| Feb. | 19 | ,, | ,, | .............................. | 60.40 |
| Mch. | 1 | ,, | ,, | .............................. | 394.34 |
| ,, | 7 | ,, | ,, | .............................. | 11.63 |

$5,405.88"

Prior to July 1, 1931, the county treasurer, as such, checked on the Bank of Barnett for sums totaling $4200, and on July 1st, he drew his treasurer's check for $4200, on the First National Bank in Versailles, payable to the Bank of Barnett and sent it by mail to the Bank of Barnett. This check was endorsed by the Bank of Barnett to the First National Bank in Versailles, and went to the credit of the Bank of Barnett. However, as appears hereinafter, the Bank of Barnett, on July 1, 1931, was one of the duly selected county depositories, and the $4200 deposit of July 1st was made pursuant to the selection of the Bank of Barnett as one of the county depositories, and has no connection with the arrangements under the *proposition* whereby the $12,000 was deposited March 24th. The notes in question were taken out of the assets of the bank, and an entry of the transaction was made in the back of what is called a day book. The entry appears under date of March 24, 1931, and the notes listed total $12,200. Cashier Bradshaw assisted the deputy commissioner in charge for about a month after the bank was formally taken over, and in his investigation the deputy commissioner ascertained that these notes were not in the assets of the bank. He made inquiry of the cashier about the notes and the cashier showed him "this list (of notes) in the back of the day book," and said that "these notes were taken over by the bondsmen as security for going on the bond for Morgan County, Missouri, for this money." Upon learning about these notes the deputy commissioner made written demand, upon the cashier and directors, for the return of these notes and the collections made thereon. The notes were endorsed: "Pay to R. A. Beard, J. E. Boan, J. D. Bradshaw, W. W. Gillum, Reu Miller, Ivor E. Bradshaw, without recourse," and signed, "Bank of Barnett, per Ivor E. Bradshaw. 3/23/31." The $12,000 did not go upon the deposit ledger of the bank. All there was in the bank to show about this money was the "bank book" and the "day book" showing the list of the notes.

There was nothing on the record of the board of directors about the $12,000 or the notes. A minute entry of January 14, 1931, was as follows: "The officers of the bank were authorized by the board . . . to borrow money when needed," and this is the record relied on by the directors and cashier for their authority as between them and their bank to get the $12,000 from the county in the manner

stated. The county was to get one per cent on the public money furnished the Bank of Barnett. The notes concerned drew seven and eight per cent, and, according to the directors, the only advantage to the bank in the end, if all had gone well, would have been the difference between one per cent on the money received from the county and what may have been realized in interest from the notes.

According to the directors and the cashier, they used the $12,000 *to buy for* the county and *from* their bank, the notes in question. Defendant, W. W. Gillum, president of the bank, testified: "Q. Did you have a meeting with the county court and see about taking out $12,000 worth of notes? Witness: We had informed the county court we would take the money with the understanding we would take out $12,000 worth of bills payable (receivable) out of the Bank of Barnett, and the board of directors had previously passed on this proposition." The question was in effect repeated and the witness answered: "They had passed on the proposition and they (the county court, as we interpret), were satisfied with that procedure and the notes were accordingly taken out." The witness was then asked if there was any record made by the board of directors as to taking out the notes and he said there was not. "Q. Before the notes were taken out, did you take the $12,000? A. Yes, sir. Q. What did you do with that money? A. We bought the notes from the Bank of Barnett without recourse and assigned them to the men who signed the bond." Witness was further asked on direct examination, "What did the board tell you about that? A. The board's action was that these notes be held for the benefit of Morgan County, Missouri, and as these notes were paid, others should be substituted and this money, should it be called, be returned to Morgan County and the bank should be the beneficiary of any interest on the notes above one per cent. . . . Q. Did this money—this $12,000, ever go into the Bank of Barnett? A. It went in the Bank of Barnett's credit account with its correspondent bank. . . . Q. Why wasn't that (taking out the notes) on the record? A. I don't know how to answer your question, Mr. Williams, except in this way: We had discussed this matter with the court and with you and with the State Finance Commissioner, and I don't know why we didn't have it on the record. I can't answer the question." On cross-examination, Mr. Gillum testified: "Q. It (the $12,000) came from the county treasurer to your bank to be deposited? A. No, sir, we had told the county court we wouldn't do it that way. We were to buy notes out of our case and wouldn't make a deposit, but would furnish a bond. Q. Did you furnish a bond? A. Yes, sir. Q. What did you furnish the bond for? A. To satisfy the court. Q. You were going to buy notes for them, according to your theory? A. We did do it. Q. But you gave the court a bond, conditioned that you would faithfully perform all of the duties

and obligations and pay upon presentation all checks drawn upon said deposit by the proper officer of the county any funds in said depository? A. We did that. Q. That was the bond you gave them? A. We did that. Q. And you gave that bond to secure the deposit of the county's money—didn't you? A. That is your interpretation, but I don't think so. Q. What did you give that for? A. We gave that bond to the county individually to protect the county and we bought those notes out of the bank, with no obligation on the bank, and that was a personal bond. Q. To protect the county from what? A. From loss. Q. How from loss? A. We were supposed to collect those notes and to see that the county got its money. . . . Q. You took those notes out to secure yourself and other individuals as signers of this bond? A. We took out the notes primarily to protect Morgan County's money. We had to sign a bond to pay if the notes didn't pay them. Q. Then it is your theory that you bought these notes for Morgan County—is that your theory of the case? A. I am not giving you my theory. . . . Was that your purpose? The WITNESS: I am not giving you my purpose or theory. Q. What was your purpose in taking out the checks,—I mean the notes? A. I have answered that question. Q. What was it? I am asking you again. A. We bought those notes, without recourse, from the bank to secure the individuals who stood good to Morgan County for this money.'' The evidence of the cashier and Boan was about the same in effect as that of the president. These three were the only witnesses who testified as to the manner of getting the $12,000 from the county.

█ It will be noted that division II of the proposition provides that the county treasurer ''shall abide by the terms'' of Section 12188, Revised Statutes 1929, and that division III provides that the banks concerned shall execute bonds as provided in Section 12187, Revised Statutes 1929. These sections are a part of the statute pertaining to county depositories. March 2, 1931, when the *proposition* was filed in the county court, the county depositories, as stated, were the Bank of Versailles and the First National Bank in Versailles, and it appears that on April 10, 1931, and during the same term of the county court at which the proceedings were had on the *proposition*, the county court advertised for bids for county depositories to be selected at the May Term of the court, ''for the term of two years.'' It appears that the Bank of Barnett was, on May 6th, at the May Term of the county court, selected as a county depository for twelve per cent of the county funds; but all there was about the Bank of Barnett being a county depository at the time the $12,000 was deposited was in the proceedings on the *proposition* and the bond, and manifestly, the Bank of Barnett was not a county depository when the $12,000 was turned over to it. It is equally certain that the directors of this bank could not be lawfully authorized by the county court *to buy* these notes *for*

the county. Article 9, Chapter 85, Revised Statutes 1929 (Secs. 12184 et seq., R. S. 1929, Mo. Stat. Ann., secs. 12184 et seq., pp. 6455 et seq.) relating to county depositories, prescribes for the county court and the county treasurer the only method of dealing with public funds, so far as concerns the placing of such funds in banks. The controversy is, in fact, between the depositors and other creditors of the Bank of Barnett on the one hand and Morgan County on the other. [Mann v. Bank of Greenfield, 329 Mo. 862, 46 S. W. (2d) 874, l. c. 875, and cases there cited.]

 The county in its brief states its contention in this way: "Morgan County, under the law and evidence, is entitled to have this decree in equity, impressing a constructive trust on this $12,000 on both the cash paid to Morgan County and the notes in the hands of the receiver, affirmed. Morgan County is entitled to this trust *ex maleficio*, because Sections 12184-12198 of Mo. 1929 were never complied with by the Bank of Barnett, there was no order by the county court selecting the Bank of Barnett as a county depository for the $12,000, and the Bank of Barnett did not qualify according to the terms of Section 12187-1929 by delivering a legal depository bond to Morgan County." As supporting this contention, these cases are cited: Tate v. Citizens' Savings Bank et al., 223 Mo. App. 957, 21 S. W. (2d) 222 (to establish a vendor's lien); Aurora School Dist. v. Bank of Aurora, 227 Mo. App. 339, 52 S. W. (2d) 484 (for a preference); In re Cameron Trust Co., 330 Mo. 1070, 51 S. W. (2d) 1025 (for a preference); White v. Greenlee, 330 Mo. 135, 49 S W. (2d) 132 (for a preference); Marion County v. First Savings Bank of Palmyra, 336 Mo. 675, 80 S. W. (2d) 861 (for a preference); Polk Township v. Harrison (Mo. App.), 64 S. W. (2d) 738 (for a preference and counterclaim); Huntsville Trust Co. v. Noel et al., 321 Mo. 749, 12 S. W. (2d) 751 (to enjoin sale of United States bonds pledged under what is now Section 12187, R. S. 1929, as amended, Laws 1935, p. 316); and Horigan Realty Co. v. First National Bank (Mo. App.), 273 S. W. 772 (to recover trust funds deposited by an individual in a bank). None of these cases, and no case we have been able to find, supports the county's contention. That the Bank of Barnett was not a legal depository of the county at the time of the $12,000 deposit is conceded, therefore, the bank held these public funds as trustee *ex maleficio* (In re Cameron Trust Co., supra), but that relation would not create a trust in favor of the county upon these particular notes and the collections thereon, any more than on the other assets of the bank. Also, it is clear that the cashier and directors of the Bank of Barnett had no authority to take out of their bank these notes and assign them to those who signed the bond to the county in order to secure them or protect them from loss by signing the bond. Such proceeding was void *ab initio*. [Frankford Exchange

Bank v. McCune et al. (Mo. App.), 72 S. W. (2d) 155, and cases there cited.] The Frankford Exchange Bank case was in replevin, by the Commissioner of Finance, to recover from the directors of a failed bank certain bonds of the bank, that had been by the directors (as in the present case) assigned to themselves, to protect them, for becoming sureties for the bank on a county depository bond. In that case the court said: "In this particular case it is very likely true, as the lower court found, that defendants had no idea of defrauding the bank, and in fact undoubtedly thought that they were aiding it (though at no risk to themselves), but nevertheless, they were drawing assets from the bank which belonged to it, *and were securing for themselves a preferred status in contravention of the rights of others who, upon the bank's failure, were equally entitled to look to the same assets as security for their own claims."* (Italics ours.) The county and the individual defendants, in the present cause, appreciating that the notes could not be assigned to the directors and the cashier to secure them against loss for signing the bond, claim that the county has an equitable lien on the notes and their proceeds to protect the county. The Bank of Barnett was not a county depository at the time of the deposit, as stated, and the county court had no right to deposit public funds in this bank under the setup in the proposition. Neither did the county have any right to invest public funds in the assets of this bank, and if the county had no right to so invest, certainly the directors could not invest for it. County courts cannot lawfully place public funds in banks except by complying with the county depository law. [Marion County v. First Savings Bank, supra; Huntsville Trust Co. v. Noel, supra.] The claim of the directors and cashier that the $12,000 was not deposited in the Bank of Barnett to the credit of the county is without support. The fact that the Bank of Barnett failed to place this deposit upon the deposit ledger in the regular way is not of consequence. The cashier furnished the county treasurer the "bank book" which showed the deposit to the county, and the county treasurer, as stated, between the time of the $12,000 deposit and July 1, 1931, drew checks, in the usual way, totaling $4200, on this deposit, and these checks were all honored. If the $12,000 was not deposited to the credit of the county, then why should the Bank of Barnett have honored the county treasurer's checks? Under the facts, the remedy of the county as to the $12,000 deposit, clearly was to proceed for a preference, which it did not do. The title to the $12,000 did not pass to the Bank of Barnett, and the Bank of Barnett held the county's money as trustee *ex maleficio*, but on the other hand, the title to the notes and the collections thereon did not pass to the county or to the directors. The title to these notes and the collections thereon remained in the Bank of Barnett; they were assets of the bank, and when it closed, the possession of its assets

passed to the Commissioner of Finance. Subdivision 3, Section 5316, Revised Statutes 1929 (Mo. Stat. Ann., p. 7547) provides: "Whenever any corporation or private banker subject to the provisions of this chapter so desires, it or he may place its or his affairs and assets under the control of the commissioner by posting a notice on its front door as follows: 'This bank (or trust company) is in the hands of the finance commissioner.' The posting of this notice or of a notice by the commissioner that he has taken possession of any such corporation or private bank shall be sufficient to place all its assets and property, of whatever nature, in the possession of the commissioner . . ." It will be noted that subdivision 3, Section 5316, provides that a bank may pass the possession of its assets to the commissioner by posting the notice mentioned in the section. It does not appear that such notice was posted. It does appear, however, that the bank *closed* November 2, 1931, and it does no violence to the record to assume that such notice was posted.

If the county could follow these notes and have impressed upon them and the collections therefrom a trust in its favor, then the county would be accorded a standing denied to any other creditor of the Bank of Barnett, and would be the beneficiary of the utterly void steps taken, which resulted in the placing of the $12,000 in this bank. It is conceded that the proceedings resulting in the county making this deposit were utterly void. Counsel for the county in their brief say: "By this illegal and void contract, the Bank of Barnett and its officers became a trustee *ex maleficio* and they did not obtain legal title to the $12,000, but merely possession." And counsel for the county further say: "These $12,200 worth of notes transferred from the Bank of Barnett into which was traced the $12,000 of public monies were (when the bank closed) out of the possession of the Bank of Barnett and held as security for the protection of Morgan County." The trouble with the last-mentioned statement of counsel is that these notes were not *legally* out of the possession of the .Bank of Barnett and were not lawfully *held* for the protection of the county. The trial court appointed a receiver for the notes in question, and Cashier Bradshaw presumably turned over to the receiver all these notes not collected. The record shows that the notes delivered to the receiver total "approximately $5700," but the receiver testified that the amount was "probably a little more."

The bank closed November 2, 1931, and all the money "paid in" to the county treasurer by the cashier and director, Boan, was paid *after* the bank closed, and $2068.82 was paid on November 7th, five days after the bank closed and two days before it was formally taken over by the Commissioner of Finance. The other amounts "paid in" by Cashier Bradshaw and Boan were all after the bank was in the hands of the commissioner, and these payments date from November 21, 1931, to March 7, 1932, and total the sum of $3337.06.

The notes, or those that may yet remain, that were turned over to the receiver, and the proceeds therefrom by him collected, if any, should be turned over to the Commissioner of Finance and the commissioner should have judgment against the county for the sum of $5405.88, with interest at six per cent from date of judgment. Such being our conclusion, it follows that the judgment should be reversed and the cause remanded with directions to enter judgment directing the receiver to turn over these notes, or those that may yet remain and not collected, to the Commissioner of Finance, and that the receiver turn over to the commissioner whatever collections, if any, have been made by him from these notes, and with the further direction that the court enter a judgment in favor of the Commissioner of Finance and against Morgan County, Missouri, for the sum of $5405.88, with interest at six per cent from date of judgment; and with the further direction that the Commissioner of Finance pay to the receiver, from the funds received by the commissioner, a reasonable amount for the services and expenses of the receiver, to be fixed by the trial court. And it is so ordered. *Ferguson* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.