[Sac. No. 3403. In Bank.—December 5, 1923.]

## NELLIE E. SCHOOLER, Appellant, v. EDWARD THOMAS WILLIAMSON, as Executor, etc., Respondent.

[1] TRUSTS — TRANSFER OF BONDS — DECLARATIONS OF DECEASED.—In an action against an executor to establish plaintiff's ownership of certain bonds alleged to have been transferred to her by the deceased, conversations concerning said bonds which were in deceased's safe deposit box and contained in an envelope bearing plaintiff's name and address, between the deceased and his attorney before and after the time of the alleged transfer, which conversations showed that there had been no delivery of the bonds and that they were a part of the deceased's estate, were admissible to show that the decedent knew at the time he is alleged to have written the name of the plaintiff upon the envelope containing the bonds that such writing would not have the effect of transferring title to plaintiff, and that notwithstanding such writing, if there was no delivery of the bonds he would still have full power of disposition over such bonds as a portion of his estate.

[2] ID.—EVIDENCE—INDORSEMENT ON ENVELOPE CONTAINING BONDS—INTENT—DECLARATION OF DECEASED.—The declaration of the deceased to his attorney, made a week after the time of the alleged transfer to plaintiff, that the envelope and the indorsement thereon were the same referred to by him in a conversation between the attorney and himself two years earlier as having been made by him without any intention of making a gift of the bonds, tended to show the purpose and intent of the deceased in making such indorsement, whenever it was made.

[3] ID. — EVIDENCE — DECLARATIONS — RES GESTAE. — In such an action, if the statement by decedent, "These are Nellie's (referring to the plaintiff), made about twelve days after the time of the alleged transfer of the bonds, was a part of the parol declaration of trust relied upon by plaintiff, the intermediate declaration by the deceased to his attorney, made a week after the time of the alleged transfer, that he owned the bonds and that there had been no delivery thereof, was a part of the res gestae and therefore admissible, and the introduction of the former declaration made the decedent's declaration to his attorney also admissible.

[4] ID.—INTENT—TITLE—DECLARATIONS.—In such an action, where it was doubtful what the decedent intended with reference to a disposition of the bonds, declarations made by the deceased, while in the possession of the bonds, concerning his title to the bonds and character of his possession of the bonds was proper evidence.

[5] FINDINGS—EQUITY CASE—JURIES AND JURORS.—The findings of a jury in an equity case are merely advisory.

[6] TRUSTS—EQUITY.—The instant action, being one to secure a judgment declaring that the defendant holds the bonds in trust for plaintiff and that the purpose of the trust had been so far accomplished that the bonds may be delivered to her is an equity case.

APPEAL from a judgment of the Superior Court of Butte County. Ernest Weyand, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Bond & Deirup, William H. Schooler and Charles A. Shurtleff for Appellant.

Charles P. Gale and George F. Jones for Respondent.

WILBUR, C. J.—In this action the plaintiff seeks to establish her right to ten one thousand dollar bonds of the Pacific Telephone and Telegraph Company, now in the possession of the defendant as executor of the last will of Joseph Richardson Houghton, deceased. These bonds first came into possession of the defendant in October, 1920, when he was appointed guardian of Joseph Houghton, who had been on the 25th of October, 1920, declared an incompetent. They were at that time in a safe deposit box in the vaults of the Union Trust building in an envelope, on the outside of which was indorsed the following: "Mrs. Nellie E. Schooler, #3859–21st Street, San Francisco, Cal.," and upon the back of the same envelope in the same handwriting, but in pencil, was the following: "10 bonds Pac. Telephone & Tel. Company. Interest payable Jan. 2nd and July 2nd—5 per cent, per annum."

Guy R. Kennedy, an attorney at law, who drew the will of the decedent, testified that between the first day of August, 1918, and the fifteenth day of April, 1919, he had a conversation with Mr. Houghton in Chico in which the latter said that he had an envelope on which there was the name of Mrs. Schooler written together with her address in his safe deposit box. That at that time he stated that he had not given them (the bonds) to her and had not given possession of them to her, and they were a part of his estate the same as the other bonds and that Mr. Houghton then asked the

witness if under the circumstances she would get the bonds after his death and the witness told him that she would not. On April 15, 1919, the witness drew the will of Mr. Houghton and at that time had a conversation with him about an envelope in his safe deposit box in the Union Trust Company which contained ten one thousand dollar bonds on which the name of Nellie E. Schooler was written, together with her address. The witness testified: ''I asked him about the envelope again and asked him if he had given those bonds that it contained to Mrs. Schooler and he said 'No,' and I asked him if he had delivered possession of them to her and he said 'No,' and I asked him if they were part of his estate and he said 'Yes,' and I said, 'They go the same as the rest under the terms of the will,' and he said, 'Yes.' '' On July 26, 1920, this witness and Mr. Houghton visited the safe deposit vaults of the Union Trust Company and opened his safe deposit box. At that time the witness saw the envelope containing the ten one thousand dollar bonds of the Pacific Telephone and Telegraph Company with the name and address of the plaintiff written thereon. He then examined the envelope and identified it as the same envelope offered in evidence and testified that at the time the same was exhibited to him by Mr. Houghton the witness asked: '' 'Major, is this the envelope you talked about in Chico?' and he said, 'Yes,' and I said, 'Have you ever given these bonds to Mrs. Schooler?' and he said, 'No,' and I asked him if he ever delivered possession of them to Mrs. Schooler and he said, 'No,' and I said, 'Are they part of your estate?' and he said, 'Yes,' and I said, 'Just the same as the other bonds,' and he said, 'Yes.' '' This witness also testified that in the first will executed by the deceased ten thousand dollars in bonds was left to Mrs. Schooler and that the conversation concerning the envelope arose in connection with the execution of the new will in which the legacy to Mrs. Schooler was reduced five thousand dollars.

The coupons on the bonds due January 1, 1920, and July 1, 1920, were not clipped from the bonds and were still thereon at the time of the death of the decedent.

It is clear that upon this evidence the judgment of the trial court in favor of the defendant was amply justified, but the appellant contends that the evidence of the declarations of the deceased hereinbefore stated were improperly re-

ceived in evidence because they were self-serving declarations and hearsay.

Before disposing of the question thus raised by the appellant the evidence upon which she relies to establish her rights to the bonds will first be stated. Appellant alleges that on the nineteenth day of July, 1920, the decedent informed her that he intended to go at once to the Union Trust Company and that he had some bonds there that "I shall fix for you, and then that will make it right." That on the next day he told her that he had "fixed it for me and that he felt very much better over it, he said, 'Those bonds were there.' I said, 'Perhaps I will not get them,' and he said, 'Oh, Ed is honest; Ed will give them to you.'"

Frederick William Clements testified that he was with Major Houghton on the nineteenth day of July, 1920; that at the request of the decedent he accompanied him to the safe deposit vaults in the Union Safe Deposit and Trust Company at the corner of Market and Grant Avenue; that at that time and in his presence the bonds were counted, the numbers written down and that at that time the bonds were taken from one envelope and placed in another upon which the deceased wrote the name and address of the plaintiff, which envelope was identified as the one introduced in evidence containing the bonds at the time they came into the possession of the defendant. The envelope containing the bonds was replaced in the safe deposit box and the decedent stated, "'I am glad I done that,' and pointing to the box he said, 'There is five thousand dollars more for her there.'" As they were leaving the following conversation occurred between the witness and Mr. Houghton: "I said, 'Joe, you are not doing that right.' I said, 'Supposing that envelope gets lost?' He said, 'Ed will give them to her,' meaning Mr. Williamson, and I said, 'That is all right if you could come back the day after you are dead and see that she gets them it will be all right,' and he said, 'You see that she gets them, they are hers and for her and you see that she gets them.'" The witness testified that he repeated the statement later and said that he had told the plaintiff what he had done. The witness testified that afterward he had a number of conversations of similar import and that the witness repeatedly stated to Mr. Houghton, "You are not doing this right, Major."

On the 31st of July, 1920, the witness testified that he again accompanied Mr. Houghton to the safe deposit vaults; that the box was again opened and Mr. Houghton made a search among his papers, apparently looking for a will and during the course of the search picked up the envelope and said, "These are Nellie's, I am glad I done that."

The deceased was about seventy-four years old at the time of his death. He left no near relatives and his estate was valued at about one hundred and sixty thousand dollars, most of which was bequeathed by his will to his friends.

[1] These conversations between Mr. Houghton and his attorney with reference to the effect of an indorsement upon the envelope containing bonds were admissible to show that the decedent knew at the time he is alleged to have written the name of the plaintiff upon the envelope containing the bonds that such writing would not have the effect of transferring title to the appellant, and that notwithstanding such indorsement, if there was no delivery of the bonds he would still have full power of disposition over such bonds as a portion of his estate. The declarations of 1918 and 1919 of the donor that he had theretofore placed the bonds in an envelope so indorsed were wholly immaterial for any other purpose, for it is conceded that the decedent owned the bonds when he made these declarations tending to show his ownership, and in so far as they tended to confirm title in the decedent at that time, such declarations conform to the theory of the appellant, namely, that he was at that time the owner of the bonds. A week after the time fixed by the appellant's witnesss as the time of the placing of her name and address upon the envelope Mr. Houghton stated to his attorney that the envelope and the indorsement thereon were the same referred to by him in the conversation two years earlier as having been made by him without any intention of making a gift of the bonds. [2] This declaration concerning the indorsement clearly tended to show the purpose and intent of the owner in making such indorsement, whenever it was made.

It may be conceded that the declarations of the deceased made after the transaction of July 19, 1920, concerning the title to the bonds would not be admissible against a person to whom he had transferred the bonds, or an equitable interest therein, if such declarations were in derogation of that

interest (*Keese* v. *Beardsley,* 190 Cal. 465 [26 A. L. R. 1538, 213 Pac. 500]). But the sole question here is whether or not there was a transfer of such equitable interest. If the transfer be conceded, the subsequent declarations would have no probative value because such declarations are only material upon the issue of transfer. The question here in issue is the motive and intention of the owner of the bonds in holding them in his own safe deposit box without delivery of them to the plaintiff, and without any. indorsement thereon indicating an intention to so deliver said bonds and without any evidence of a transfer of title or interest in the bonds other than the somewhat equivocal remarks made by the owner at the time the witness Clements was present, and immediately before and after that occasion. The most definite statement indicating a present intent to pass a beneficial interest in the bonds is the statement of Mr. Houghton to the witness Clements on July 31, 1920, ''These are Nellie's, I am glad I done that.'' It is only on the theory that on July 19th or July 31, 1920, the donor then and there intended to surrender to the plaintiff the entire beneficial interest in the bonds and also intended to retain the title and possession thereof for her, that the plaintiff can succeed in this case (Thornton on Gifts and Advancements, p. 423, sec. 419). It is conceded that if the evidence merely establishes an intention on the part of Mr. Houghton to make a testamentary disposition of the bonds or 'that he intended to make a gift of the bonds, that the transaction was ineffective. Plaintiff's whole case turns upon the significance of the statement of Mr. Houghton to the effect that he had ''fixed'' the bonds so that plaintiff would get them when he died and that he subsequently stated, ''These are Nellie's.'' [3] If this last-mentioned statement of July 31st is a part of the parol declaration of trust relied upon by appellant it is clear that the intermediate declaration of July 26th is a part of the *res gestae* and therefore admissible (Jones on Evidence, sec. 347; sec. 1850, Code Civ. Proc.), and that the introduction of the declaration of July 31st made the decedent's declarations of July 26th also admissible. We do not, however, place our decision wholly on that ground. In considering the evidence bearing upon his intention it is clear that if he believed that under the law the effect. of writing her name on the back of the envelope con-

stituted the bonds her property, or if he believed that the effect of the transaction of July 19, 1920, was to bequeath the bonds to her or if he believed that the transaction amounted to a gift of the bonds, he was mistaken, but the court cannot give effect to such gift or bequest because of his *bona fide* belief that title to the bonds had passed or would pass by reason of his acts. It is significant · that nothing was said or done concerning the interest coupons attached to the bonds then due or as to the interest which would accrue during the lifetime of the deceased.

[4] In this state of the case the declarations made by the deceased while in the possession of the bonds concerning his title to the bonds and character of his possession of the bonds was proper evidence.

The rule is thus stated in Thornton on Gifts and Advancements, *supra,* page 200, section 225: " . . . When the circumstances are equivocal and it is doubtful whether the donor intended a gift or a loan, explicit declaration of intention made after the transaction has taken place is admissible for the purpose of removing the ambiguity. Thus where a donor deposited money in a savings bank in the name of the donee without his knowledge, and retained possession of the pass-book until he died, letters between the bank and the donor with reference to the deposit, and his declarations relating to the deposit while holding the book were admitted, to show the character of the act. So any declarations of the donor while in possession of the subject matter of the gift is admissible in evidence as part of the *res gestae,* to prove the character of his possession." (See, also, Id., pp. 198, 199, sec. 224; see, also, *Williams* v. *Kidd,* 170 Cal. 631 [151 Pac. 1]; *Donahue* v. *Sweeney,* 171 Cal. 388 [153 Pac. 708]; *Fisher* v. *Oliver,* 174 Cal. 781 [164 Pac. 800]; *Ruiz* v. *Dow,* 113 Cal. 490, 497 [45 Pac. 867]; *Estate of Hall,* 154 Cal. 527, 532 [98 Pac. 269].)

The evidence complained of was properly admitted and the findings of the court were amply supported by the evidence.

Appellant raises another point based upon the fact that the case was tried before a jury and a verdict was rendered in favor of the plaintiff which was ignored by the trial judge who entered a judgment on findings made in favor of the defendant. [5] Appellant claims that the trial judge

had no right to make findings, thus ignoring the verdict of the jury, but it cannot be questioned that the findings of a jury in an equity case are merely advisory (*Sweetser* v. *Dobbins,* 65 Cal. 529 [4 Pac. 540]; *Davis* v. *Judson,* 159 Cal. 121 [113 Pac. 147].)   **[6]**   This is an equity case.   The appellant never acquired the legal title to the bonds in question.   Upon her own theory of the case she is merely the beneficiary of a trust created by the testator.   Her action is to secure a judgment declaring that the defendant holds the bonds in trust for her and that the purpose of the trust had been so far accomplished that the bonds may be delivered to her.   Several other incidental points are advanced by the appellant, but the case is fully disposed of by what has been heretofore stated and no other point requires further consideration.

Judgment affirmed.

Myers, J., Kerrigan, J., Seawell, J., Lawlor, J., and Lennon, J., concurred.

Rehearing denied.