[S. F. No. 16815. In Bank. Feb. 19, 1943.]

HARLEY HISE, as Building and Loan Commissioner, etc., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

B. E. Ahlport, W. G. Harmon, Roy D. Reese, George S. Dennison and James E. Burns for Petitioner.

J. H. O'Connor, County Counsel, Douglas De Coster, Deputy County Counsel, Wood, Crump & Rogers, Guy Richards Crump, Hugo H. Harris and David E. Field for Respondent.

EDMONDS, J.—In 1939, Ralph W. Evans, the then Building and Loan Commissioner, took possession of the business and assets of Pacific States Savings and Loan Company, and the Superior Court of the City and County of San Francisco has held that its financial condition justified his action. An appeal from that order is pending and undetermined. Meanwhile, Evans' successor has undertaken the liquidation of the company (see *Trede* v. *Superior Court, post,* p. 630 [134 P.2d 745]), and in doing so he is faced with an order of the Superior Court of Los Angeles County directing him to show cause why a receiver appointed by it should not seize

and sell certain of the Pacific States' assets to satisfy a judgment. This conflict of authority is the basis of the present proceeding.

On May 23, 1931, Fidelity Savings and Loan Association and Pacific States Savings and Loan Company entered into an agreement, approved by the then Building and Loan Commissioner, pursuant to which the company took title to and possession of all of the assets, both real and personal, owned by the association on that day. A month later, the commissioner took possession of the assets, business and affairs of the association, which consisted chiefly of the agreement, and has since held them as a statutory liquidator. The company, complying with the terms of the contract, delivered to the commissioner, as such liquidator, a master definite term certificate of a face value equal to 75 per cent of the total face value of the outstanding investment certificates of the association, and a master participating certificate of a face value equal to 25 per cent of the total face value of the outstanding investment certificates. The contract allowed the holders of an investment certificate in the association to surrender it for cancellation and to receive in exchange a definite term certificate and participating certificate representing a proportionate interest in the master certificates. As investors took advantage of this provision and surrendered certificates for exchange, the master certificates were reduced by the face value of the surrendered certificates.

Pacific States agreed to liquidate the Fidelity assets, apply the proceeds toward the payment of the definite term and participating certificates after deducting costs of liquidation and its fees as liquidator, and return the balance, if any, to the association. As indicated by their name, the definite term certificates are unconditional promises to pay their face value at a definite date. Payment of the participating certificates is conditioned upon the existence of a surplus from the proceeds of the liquidation after their application to the payment of the definite term certificates and certain other obligations.

On May 23, 1936, the expiration date of the original agreement, the process of liquidation was not yet completed and by a supplemental agreement the "final payment date" was extended for two years. At that time, as Pacific States had not fulfilled the terms of the contract, John Eggert and

others, as representatives of the definite term certificate holders, the participating certificate holders, and the holders of Fidelity investment certificates who had not exchanged their certificates for those issued by Pacific States brought suit to establish and impress a trust upon the Fidelity assets in the possession of the company, to remove it as trustee, and for an accounting.

. One month after the commencement of the Eggert action, Pacific States offered for sale at public auction the remaining assets of Fidelity in its hands, and purchased most of them. The following month, it credited Fidelity with an amount representing its valuation of the assets not disposed of at the auction sale and set them up on its books accordingly.

On March 4, 1939, Ralph W. Evans, as Building and Loan Commissioner, under the authority of section 13.11 of the Building and Loan Association Act (Stats. 1931, p. 483, as amended, Deering's Gen. Laws, Act 986), took possession of the property, business, and assets of Pacific States. Shortly thereafter, acting in his official capacity, he filed a complaint in intervention in the Eggert action, asserting his interest both as liquidator of Fidelity and as the commissioner in possession of the assets and business of Pacific States. On April 7, 1939, the respondent court ordered the segregation by the commissioner, pending the determination of the action, of the property transferred by Fidelity under the 1931 agreement, together with all property substituted for any of it, and also directed him to care for, keep possession of, and manage those assets and the income from them separate and distinct from all other property of Pacific States.

The Eggert suit was successfully prosecuted to judgment upon the theory that, by the 1931 agreement and the supplemental agreement of 1936, Pacific States received the Fidelity assets in trust for the owners and holders of the definite term and participating certificates issued by the association. The trial court found that, under the agreement, Pacific States took title to and possession of the Fidelity assets as trustee for the benefit of the plaintiffs, the association, and the Building and Loan Commissioner as statutory liquidator of the association. More specifically, the court found that all holders of definite term certificates, including the master definite term certificate, are entitled to receive the unpaid balance of the face value of such certificates out of

the trust assets transferred by Fidelity to Pacific States. And, upon an accounting, it found that proceeds are, or had been, available for payment to the participating certificate holders.

Other findings relate to the procedure by which the beneficiaries of the trust are to receive payment of the amounts due each of them. "In the exercise of judicial discretion," said the court, "a lien should be impressed upon the former Fidelity real estate assets in the State of California acquired by Pacific States by purchase at the auction sale" for the purpose of securing the payment of the amounts owed by it to the holders of the definite term and participating certificates. And since the money judgment to be entered in the action would be in favor of approximately seventeen thousand persons, collection "should be aided by the appointment of a receiver to carry [it] . . . into effect by foreclosing the lien herein mentioned by seizing and selling the property impressed thereby, when necessary, and as may be ordered by the court; to collect and receive the amount of the judgment herein ordered; to receive and impound monies segregated in the hands of the Building and Loan Commissioner of the State of California under . . . 'The Segregation Order' dated . . . April 7, 1939 and to disburse the same to the proper parties entitled thereto in the pro rata amounts as fixed by said judgment."

Judgment in accordance with the findings of fact and conclusions of law was entered on July 7, 1941, and included a provision: "That the Court hereby reserves jurisdiction of this cause for the purpose of designating the Receiver to be appointed herein and for the purpose of making such further order or orders herein as may be necessary to instruct and to enable said Receiver to fulfill his duties in carrying this judgment into effect." On July 16, 1941, the court made its order appointing Ralph W. Evans, who was then the Building and Loan Commissioner, receiver to carry the judgment into effect. On the same day, in order to allow Evans to retain for the Eggert receivership the attorneys who represented him as commissioner, the respondent court, by order, suspended its rule prohibiting the allowance, or the payment from custodial funds in the hands of a receiver, of any compensation for services performed for the receiver by an attorney for any party to the action in which the receiver is appointed.

Pacific States appealed from the whole of the judgment with the exception of that part of it in favor of the holders of the definite term certificates, and the provision that the holders of the definite term certificates "do have and are decreed to have a lien" upon the Fidelity assets purchased and taken over by Pacific States Savings and Loan Association at the auction sale, "superior to the title or interest of defendant, Pacific States Savings and Loan Company, thereto or therein, as security for the payment and satisfaction of" the judgment in their favor. Its appeal is now pending in the District Court of Appeal, and Harley W. Hise, the successor of Evans as Building and Loan Commissioner, was in possession of the business and assets of Pacific States at the time the present proceeding was commenced.

During the time Evans was the commissioner, he paid to himself as receiver for the definite term certificate holders, some $800,000 on account of the Eggert judgment. When Hise became commissioner, he petitioned the Superior Court, in and for the City and County of San Francisco, for directions in regard to the giving of notice to the Eggert judgment creditors and the acceptance of a claim or claims for the amount which the Los Angeles court awarded them. Pursuant to this petition, on March 31, 1942, the San Francisco court made an order authorizing the mailing of one copy of the notice to creditors and investors required by section 13.16 of the Building and Loan Association Act, *supra*, to Ralph W. Evans as receiver for the Fidelity certificate holders, in lieu of sending a separate notice to each one of them. By the same order it authorized Evans to present, and Hise, as Building and Loan Commissioner, to receive, proofs of all rights under the Eggert judgment in the form of two claims, one for the liability to definite term certificate holders and the other for the liability to participating certificate holders. Since Hise became commissioner, he has paid to Evans, as receiver, $500,000 from the funds of Pacific States.

Thereafter Evans filed with the respondent court his petition as receiver for an order directing the commissioner to show cause why he should not be ordered to render an accounting of the amounts held by him under the segregation order, and to pay the receiver from that account an amount sufficient to satisfy the portion of the money judgment from which no appeal was taken. Evans also asked the court to instruct him with respect to the seizure and sale of proper-

ties as ordered by the judgment in the event that it was not paid. In response to his petition, the court issued an order directing Hise, as commissioner, to show cause why the relief asked should not be granted. This court, upon the application of Hise, then issued an alternative writ directing the Los Angeles court to show cause why it should not be prohibited from enforcing its judgment. The respondent has answered the Hise petition but only questions of law are presented for decision.

The petitioner contends that the judgment which the respondent is attempting to enforce violates the Building and Loan Association Act, *supra,* insofar as it directs the commissioner to segregate the former Fidelity assets and the income derived therefrom from assets of Pacific States, and impresses a lien for the payment of the judgment upon the former Fidelity property. The Eggert action, he says, is a suit at law and not in equity, and the court consequently was without power to declare a lien. Furthermore, he urges, the impressment of the lien to secure the judgment is void upon the face of the record because the court found that the trust terminated when Pacific States took over the remaining Fidelity assets in December, 1938. And the express finding of fact and conclusion of law that a lien "should be impressed" upon the former Fidelity assets clearly indicates, so he argues, that the lien was purportedly created by the decree in direct contravention of the prohibition of section 13.16 of the Building and Loan Association Act, *supra,* against the creation of a lien pending the process of liquidation by the commissioner. Another point relied upon is that jurisdiction to adjudicate and supervise the seizure of property held by Pacific States and the liquidation thereof rests solely with the Superior Court of the City and County of San Francisco, where it had its principal place of business. More particularly, Hise charges, the lien was impressed in accordance with the finding and conclusion that a trust was created by the agreement sued upon but that this determination is not yet final.

The only valid effect of the judgment in the Eggert action, asserts the petitioner, was to adjudicate the debtor and creditor relationship and the amount due. And the appointment of Ralph W. Evans as receiver, he claims, was a nullity because he was a party to the action and the written consent

of all other parties to the action was not filed as required by section 566 of the Code of Civil Procedure.

In answer, the respondent court contends that, at the time of the commencement of the action, it had jurisdiction of both the parties and the subject matter. There is nothing in the act, it is said, which requires that actions against the commissioner be brought in the county of the principal place of business of the association of which he is in possession. The judgment, insofar as the definite term certificate holders and the lien in their favor are concerned, has become final. And on collateral attack, this court is bound by the judgment that the 1931 agreement constituted a transfer in trust, and the respondent had jurisdiction to declare and impress a lien upon the former trust property in aid of the enforcement of its decree. Having obtained jurisdiction, and sitting as a court of equity, it was the respondent's duty to administer complete relief, including the enforcement of its decree by the appointment of a receiver. Furthermore, asserts the respondent, the judgment did not create a lien within the prohibition of section 13.16 of the Building and Loan Association Act, *supra,* but was created by the acts which in equity constituted a violation of trust.

Replying to the petitioner's assertion that Evans' appointment as receiver is void, the respondent contends that he was appointed in his individual capacity, as distinguished from the representative capacity in which he intervened in the action. But even if it should be held that he was a person interested in the action within the provisions of section 566 of the Code of Civil Procedure, the respondent argues, his appointment may not be collaterally questioned because the violation of that provision renders the judgment voidable but not void. Moreover, each of the parties, including Hise, has since the appointment of Evans consented in writing to it. Both by failure to make timely objection and by affirmative acts recognizing the validity of the appointment, it contends that the petitioner has waived any right to object and is estopped from so doing.

Considering first the procedural question, section 566 of the Code of Civil Procedure reads, in part, as follows: "No party, or attorney of a party, or person interested in an action . . . can be appointed receiver therein without the written consent of the parties, filed with the clerk." Upon notice to all interested parties in the Eggert action, the re-

spondent court appointed Evans in his individual capacity as receiver to carry into effect the judgment. At the time of that appointment, no written consent of the parties was filed with the clerk. No appeal was taken from the order of appointment, and Hise, as commissioner, has recognized Evans as receiver, not only by his application to the San Francisco Superior Court for an order permitting him to mail the required notice to creditors to Evans in lieu of individual notices to each plaintiff in the Eggert action, but also by the payment to him of $500,000 to apply upon the judgment in favor of the definite term certificate holders. Under these circumstances, so far as the present proceeding is concerned, the petitioner is estopped to deny the validity of Evans' appointment as receiver for all purposes for which he could lawfully act under the judgment. (See *Weygandt* v. *Larson*, 130 Cal.App. 304, 309-310 [19 P.2d 852]; *First Nat. Bank* v. *Superior Court*, 12 Cal.App. 335, 344-346 [107 P. 322].)

The case of *A. G. Col Co.* v. *Superior Court*, 196 Cal. 604 [238 P. 926], relied upon by the petitioner, does not require a different conclusion. Without deciding whether oral consent may satisfy the statutory requirement, it was held that the trial court had no jurisdiction to appoint as receiver a person interested in the action in the absence of consent in either form and in the face of objections to the order. In the Eggert action, however, no objection appears to have been made either at the time of the hearing on the appointment or for more than a year thereafter, and the petitioner has obtained from the San Francisco court, orders authorizing him to recognize Evans as receiver. And the advantage of having a receiver represent the judgment creditors in the liquidation proceedings has also been recognized by that court in the orders which it has made.

Turning to the merits of the controversy, section 13.16 of the Building and Loan Association Act, *supra*, provides: "The determination by the commissioner to liquidate any association, evidenced by filing written notice of such determination with the court, shall operate to stay or dissolve any or all actions or attachments instituted or levied within thirty days next preceding the taking of possession of such association by the commissioner, and pending the process of liquidation as herein provided no attachment or execution

shall be levied or lien created upon any of the property of such association.'' The Eggert action, brought more than 30 days prior to the date the commissioner took possession of Pacific States, was not stayed by this statute (*Evans* v. *Superior Court*, 20 Cal.2d 186, 189, 190 [124 P.2d 820]). And there can be no question but that, when the Eggert suit was commenced, the Los Angeles Superior Court had jurisdiction of the parties and the subject matter of the action. Therefore, a final judgment of the respondent court rendered within its jurisdiction is binding upon the parties and their successors in interest.

The petitioner's assertion that the court had no right to impress an equitable lien because Eggert brought an action at law and not a suit in equity is not sustained by the record in the present proceeding. The verified petition does not include a copy of the complaint, but as the ground for invoking the jurisdiction of this court, the Eggert suit is characterized as ''an action to establish and impress a trust, substitute a trustee and for an accounting,'' and it is said that ''the acts, orders and judgment in this application complained of arose in an equity suit.'' However, in a brief the petitioner states that the action ''was not an action to establish or impress a trust, nor to substitute a trustee, nor for an accounting'' but was ''an action at law and not a suit in equity.''

It is not necessary to base a ruling upon the effect of such conflicting statements as, unquestionably, the findings of fact, conclusions of law, and judgment of the respondent determine equitable issues and include the declaration of the existence of a trust and an order requiring an accounting by the trustee. Upon collateral attack, particularly in the absence of a showing to the contrary by the petitioner, it will be presumed that these issues were properly presented by the pleadings. (See *City of Salinas* v. *Luke Kow Lee*, 217 Cal. 252, 256 [18 P.2d 335]; *Canadian etc. Co.* v. *Clarita etc. Co.*, 140 Cal. 672, 674 [74 P. 301]; *Rue* v. *Quinn*, 137 Cal. 651, 654 [66 P. 216, 70 P. 732]; *Merrill* v. *Bachelder*, 123 Cal. 674, 676 [56 P. 618]; *In re Eichhoff*, 101 Cal. 600, 604 [36 P. 11].) An action to establish and impress a trust is a suit in equity (*Schooler* v. *Williamson*, 192 Cal. 472, 479 [221 P. 195]; *Cauhape* v. *Security Sav. Bank*, 127 Cal. 197, 201 [59 P. 589]; *Reay* v. *Reay*, 97 Cal.App. 264, 270 [275 P. 533]), as are also actions to substitute a trustee

(*DeGarmo* v. *Goldman*, 19 Cal.2d 755, 760 [123 P.2d 1];
*Wickersham* v. *Crittenden*, 93 Cal. 17, 32, 33 [28 P. 788]:
*Overell* v. *Overell*, 78 Cal.App. 251, 258 [248 P. 310]), and
for an accounting from a fiduciary (*Prince* v. *Lamb*, 128 Cal.
120, 125 [60 P. 689]; *Smith* v. *Smith*, 88 Cal. 572, 577 [26
P. 356]; *Fischer* v. *Superior Court*, 105 Cal.App. 466, 470
[287 P. 556]; and see 4 Pomeroy's Equity Jurisprudence
[5th ed., 1941], sec. 1421, p. 1077, 1078). According-
ly, the respondent court was not acting beyond its jurisdic-
tion in determining that the Fidelity assets in the possession
of Pacific States are subject to an equitable lien.

 In considering the contention of the petitioner that
since, under the court's decision, the trust terminated at a
date prior to the rendition of judgment, its equitable juris-
diction also terminated as of that date, the findings of fact
must be read together. The specific finding upon which the
petitioner relies is that ''Said trust created by the original
agreement terminated on or about December 15, 1938; all
assets being then liquidated.'' But the respondent court also
found that the trust agreement included an obligation on
the part of Pacific States, as trustee, to pay the definite term
certificate holders from the proceeds of the liquidation of Fi-
delity assets, which the company did not perform. Consider-
ing the findings as a whole, it is clear that the liquidation
of the remaining Fidelity assets on December 15, 1938, did
not terminate the trustee's obligation to account for the pro-
ceeds of the liquidation and distribute them in accordance
with the terms of the trust. There could be no termination of
the trust until the trustee's obligations had been performed
and, as a consequence, the respondent had jurisdiction to
determine the extent of and enforce those obligations. (See
*Prince* v. *Lamb, supra; Smith* v. *Smith, supra; Fischer* v.
*Superior Court, supra;* and see 4 Pomeroy's Equity Juris-
prudence [5th ed., 1941], sec. 1421, p. 1077, 1078.)

 But the petitioner points to the pending appeal from
the respondent's judgment. He fails to consider, however,
the terms of the notice of appeal, which specifically excepts
from review that portion of the judgment in favor of the
holders of the definite term certificates, and their interests
are the only ones involved in the present proceeding. More-
over, no appeal was taken from that portion of the judgment
decreeing that a lien exists upon the assets of Fidelity trans-
ferred to Pacific States in November and December, 1938.

Since the judgment and lien are based upon a finding that the former assets of Fidelity were trust property, the fact that the judgment in favor of the definite term certificate holders is now final places beyond question that part of the court's determination declaring the agreement to constitute a trust. And in the event that the appellate court holds that the agreement between Pacific States and Fidelity evidences a sale and not a transfer in trust, it will affect only the interest of the participating certificate holders.

The vital question raised by the petition is the effect of section 13.16 of the Building and Loan Association Act, *supra,* upon the judgment. That section prohibits the levy of any execution, pending the process of liquidation, whether or not the action in which the judgment was rendered was commenced within or prior to 30 days before the taking of possession by the commissioner. (*Evans* v. *Superior Court, supra.*) Generally speaking the only effect of the judgment in an action not stayed by the provisions of the act, is the adjudication of the debtor and creditor relation and of the amount due. (*Evans* v. *Superior Court, supra.*) No judgment lien arises from the rendition and entry of a judgment subsequent to the taking of possession by the commissioner, even though the action upon which the judgment was based was commenced more than 30 days prior to the taking of possession and therefore was not stayed by the provisions of section 13.16. (*Evans* v. *Superior Court, supra.*) But the lien which petitioner asserts has been "created" by the Eggert action in contravention of the prohibition contained in section 13.16 is, if effective, an equitable one impressed upon the former assets of Fidelity, now owned by or in the possession of Pacific States, to secure the balance due to Fidelity's definite term certificate holders under the trust agreement.

When specific property is conveyed to a trustee charged with or subject to the payment of debts to third persons, although the legal title to the property vests in the trustee, a lien thereon is created in favor of those persons which may be enforced in equity. (See cases collected in 4 Pomeroy's Equity Jurisprudence [5th ed., 1941], sec. 1244, p. 719, sec. 1033, p. 65, n. 16; 116 A.L.R. 22, 23, 41; and see *Washington Lumber & M. Co.* v. *McGuire,* 213 Cal. 13, 20 [1 P.2d 437]; *McColgan* v. *Bank of California Assn.,* 208 Cal. 329, 337 [281 P. 381, 65 A.L.R. 1075]; *Title Ins. &*

*Trust Co.* v. *California Development Co.,* 171 Cal. 173, 201 [152 P. 542] ; *Hall* v. *Cayot,* 141 Cal. 13, 18, 19 [74 P. 299] ; *White* v. *White,* 11 Cal.App.2d 570, 574 [54 P.2d 482] ; *Nau* v. *Santa Ana Sugar Co.,* 79 Cal.App. 685, 691 [250 P. 705] ; 4 Pomeroy's Equity Jurisprudence [5th ed., 1941], sec. 1235, p. 696; 16 Cal.Jur., Liens, sec. 10, p. 308, n. 5.) In the present case, the Fidelity assets were transferred to Pacific States, subject to the obligation in favor of the definite term certificate holders, thereby creating an equitable lien upon the property in their favor. This obligation will not be fully discharged until payment has been made to them in accordance with the terms of the trust agreement. ■ And when Pacific States, as trustee, failed to pay the beneficiaries of the trust the proceeds of the sale of Fidelity's assets to itself, the property which it bought continued to be subject to the equitable lien in favor of the certificate holders. The Eggert judgment, therefore, did not create the lien, but declared the rights of the beneficiaries in the trust property as against the trustee.

In deciding a case presenting facts very similar to those now being considered, the Court of Appeals of Missouri construed a statute closely analogous to the stay of process provision of section 13.16, and held that it was not intended to cause a vendor to lose an existing lien. The vendor's lien in that case, said the court, did not attach by reason of the judgment rendered, "but by reason of the sale of the real estate and the failure to pay the purchase price, and . . . [it] existed from the date of the sale and the failure to pay." The decree, the court continued, was only a finding that the lien existed, "and, since it did so exist, it was just as effective as if the purchaser had given a deed of trust upon the property to secure the unpaid purchase money." (*Tate* v. *Citizens Savings Bank,* 223 Mo.App. 957, 967, 968 [21 S.W.2d 222].)

■ The language of the findings of fact and conclusions of law that a lien "should be impressed" does not compel a contrary conclusion. ■ Although an equitable lien is not judicially recognized until a judgment is rendered declaring its existence, the lien relates to the time it was created by the conduct of the parties. ■ Accordingly the lien declared in the Eggert judgment was not "created" by it within the meaning of section 13.16 of the Building and

Loan Association Act. The judgment is therefore valid and effective insofar as it declares the debtor-creditor relationship and the amount of the debt, designates the former Fidelity assets held by Pacific States and requires the proceeds from the liquidation of that property to be paid to the definite term certificate holders.

Whether the respondent court had the authority to direct the foreclosure of the equitable lien by seizure and sale of the property transferred by Fidelity and now in the possession of the petitioner, depends upon the scope of the applicable statutory provisions. Under the Building and Loan Association Act, *supra,* all property in the possession of an association at the time of its seizure by the commissioner shall be managed or liquidated by him in accordance with the purpose of the statute to protect the rights of all creditors and investors. Thus the act provides that "All claims, demands or causes of action of whatever nature, and regardless of whether or not· a suit shall be pending to enforce the same at the time of the taking possession of the assets of the association by the commissioner, of creditors, and persons other than investors against the association or against any property owned or held by it in trust or otherwise, must be presented to the commissioner in writing, verified by the claimant,.or someone in his behalf, within the period limited in the above mentioned notice for the presentation of claims; and the commissioner shall have no power to approve any claim not so presented, and any such claim, demand or cause of action not so presented shall be forever barred." (Sec. 13.16.) And although by section 13.13, the commissioner may pay secured claims in an amount equal to the value of the security therefor, even if the claim shall "have become barred from presentation by the expiration of the time" within which it could be presented, his authority in that regard is discretionary.

These provisions show a legislative purpose to provide for an orderly liquidation of the property of an association somewhat the same as that which has been prescribed for the administration of the property of bankrupts. "The property [of a bankrupt]," said the court in *Pugh* v. *Loisel,* 219 F. 417, 421 [135 C.C.A. 221], "is taken into custody in the condition in which it is found at the time of the filing of the petition, subject to all existing valid liens upon it. The filing of the petition, of course, does not displace or disturb such

liens; but neither the existence of such liens, nor attempts of the lienors to enforce them without resorting to the court of bankruptcy for that purpose, constitutes obstacles to the exercise by that court of the right to take into custody the bankrupt's estate and to control the administration of it. The court is vested with ample power to protect the rights of lienholders otherwise than by permitting them to be enforced in some other court or courts."

In accordance with this principle, the bankruptcy court, having acquired jurisdiction of the res, may restrain the further prosecution of a foreclosure suit already pending where it will interfere with the orderly administration of the assets of the bankruptcy estate. (*First Trust Co.* v. *Baylor*, [C.C.A. Neb.] 1 F.2d 24; *In re Locust Bldg. Co.*, [D.C.N.Y.] 272 F. 988; *In re Ball*, [D.C.Vt.] 118 F. 672; and see 8 C.J.S., Bankruptcy, sec. 267, pp. 972, 973, n. 65.) If not restrained, the creditor may, of course, enforce his lien, but the bankruptcy court, in the interest of the creditors generally, has authority to regulate the method of enforcement for the purpose of realizing as much as possible from the assets. And property which has come into the possession of the court may be sold free of a lien upon it, preference in payment from the proceeds being substituted for the right to sell the security in payment of the amount due the creditor. (*In re North Star Ice & Coal Co.*, 252 F. 301, 303.) The stay of process provided for in the Building and Loan Association Act authorizes the same method for ratable distribution of assets as is followed generally in the bankruptcy courts and avoids any preference in favor of those who might first secure judicial process for enforcement of their claims.

True, under the declaration of the judgment, the definite term certificate holders are entitled to reimbursement in full from the proceeds of the liquidation of the former Fidelity assets now in the possession of the commissioner, before the unsecured creditors are entitled to look to that property for satisfaction of their claims. But in the exercise of the authority granted him by the act, the commissioner may in his discretion liquidate the specific property at such time as he may decide is for the best interests of all parties, including the unsecured creditors, shareholders, and stockholders of Pacific States. Such a determination is justified by the fact that the act "constitutes a declaration of policy by the state

to the effect that the protection of investments in building and loan associations is a special subject of care by the state, and that the measures prescribed in the statute are necessary measures in relation to the welfare of the public.'' (*Richardson* v. *Superior Court*, 138 Cal.App. 389, 394 [32 P.2d 405] ; and see *Trede* v. *Superior Court, post,* p. 630 [134 P.2d 745].) It must be expected that the commissioner will perform his duties and that the court which is supervising the liquidation will be quick to protect the rights of all concerned in the event there is any deviation from statutory requirements.

A peremptory writ of prohibition will issue restraining the respondent court, its officers, agents, and all other persons acting by or through its orders, from taking any further steps or proceedings to enforce the Eggert judgment but without restriction upon the right of Evans, as receiver, to receive and disburse any amounts paid by the Building and Loan Commissioner in full or partial satisfaction of it.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J. pro tem., concurred.

Curtis, J., did not participate herein.