[Civ. No. 63438. Second Dist., Div. Five. Nov. 12, 1982.]

HOWARD GURKEWITZ, as Trustee, etc., et al.,
Plaintiffs and Appellants, v.
STANLEY E. HABERMAN et al., Defendants and Appellants.

COUNSEL

Michael R. Daymude for Plaintiffs and Appellants.

Barry D. Brown and Long & Levit for Defendants and Appellants.

OPINION

**FEINERMAN, P. J.**—Plaintiffs, trustees, appeal from a summary judgment based on a ruling that the statute of limitations had run on their attorney malpractice action. Defendants have filed a purported protective cross-appeal from the denial of their motion for summary judgment on the grounds that plaintiffs no longer had standing to bring suit on behalf of the trust.

Plaintiffs Howard Gurkewitz and Marvin Lynn were two of three trustees of a trust having 56 beneficiaries.[1] Under the trust agreement, dated May 18, 1970, the trust was to terminate seven years from the date of the agreement unless terminated earlier by conditions not pertinent to the present case. It appears that the trust was established so that the trustees could act on behalf of the beneficiaries in all matters relating to a note which was the res of the trust. These matters specifically included "all causes of action, claims, demands and rights against Security Title Insurance Company."

Defendant attorneys represented plaintiffs, in their capacity as trustees, in an action against Security Title Insurance Company. Defendants filed a complaint in that action on July 26, 1972. On March 22, 1977, that action was dismissed by the trial court pursuant to Code of Civil Procedure section 583, subdivision (a) for failure to prosecute. Plaintiffs were informed of this dismissal by defendants in a letter dated October 31, 1977. The Court of Appeal affirmed the order of dismissal and filed its opinion on October 25, 1978. Pursuant to California Rules of Court, rule 24(a), the decision became final on November 24, 1978, 30 days after it was filed. Plaintiffs then had 10 days (until Dec. 4, 1978) to file a petition for a hearing in the Supreme Court. (Cal. Rules of Court, rule 28(a).)

Plaintiffs were notified of the appellate court's decision by a letter dated November 20, 1978, which stated, in part: "[W]e feel that an attempt to have the matter reheard by that Court or heard by the Supreme Court of the State of California would not be well taken. [¶] Since this matter is now completed we are closing our files."

---

[1]The third trustee, Albert Sacks, refused to join this suit as a plaintiff and was sued as a defendant. He did not answer and his default was entered in March 1980.

On December 20, 1978, defendant Klein wrote to Security Title Insurance Company's attorney, George Schiavelli, to "confirm our various conversations over the past several weeks" regarding costs on appeal, originally fixed at $1,532.27, and to seek an amended memorandum of costs on appeal. On March 23, 1979, Klein wrote to plaintiffs, stating that Security Title had filed a memorandum of costs on appeal of $1,261.03 and enclosing a copy of that memorandum. This letter stated: "With the delivery to you of this Memorandum of Costs on Appeal, we believe that our representation of you in this matter is terminated."

Plaintiffs filed this malpractice suit against their former attorneys on November 26, 1979.

Code of Civil Procedure section 340.6, subdivision (a), states in pertinent part: "An action against an attorney for a wrongful act or omission . . . arising in the performance of professional services shall be commenced within one year after the plaintiff discovers . . . the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: (1) The plaintiff has not sustained actual injury; (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; . . . "

Plaintiffs certainly discovered the alleged wrongful omission of defendants no later than October 31, 1977, the date of the letter informing them of the trial court's dismissal of the suit against Security Title Insurance Company for lack of prosecution. The one-year provision of the statute had run when plaintiffs filed their action unless (1) plaintiffs qualify under a tolling provision of the statute, and (2) the tolling provision tolls both the one-year and the four-year provisions of the statute.

*When Did Defendants Cease To Represent Plaintiffs Regarding the Specific Subject Matter in Which the Alleged Wrongful Act or Omission Occurred?*

We believe this is a question of first impression in California. Neither the California Rules of Court nor the Code of Civil Procedure provide the answer to our question. Rule 48(b), California Rules of Court, mandates the procedure for withdrawal or substitution of attorneys. Code of Civil Procedure sections 284 and 285 relate to changes or substitutions of attorneys. The instant case does not involve a withdrawal or substitution of attorneys. Rather, we are asked

to determine at what point the matter terminated and the attorneys were relieved of responsibility toward their clients.

Code of Civil Procedure section 1049, declares that an action is deemed pending until its final determination upon appeal, or until the time for appeal has passed. However, section 340.6, subdivision (a)(2) refers not to the pendency of the action but to *representation* of the plaintiff "regarding the specific subject matter in which the alleged wrongful act or omission occurred."

We must decide when an attorney ceases to represent a client, absent a withdrawal or change of attorneys. The tolling provision in Code of Civil Procedure section 340.6, subdivision (a)(2) is substantially similar to the "continuous representation" rule created by the New York courts. The New York rule in attorney malpractice cases was derived from concepts delineated in medical malpractice decisions. The explanation for this policy is stated as follows: "We believe that the rule is equally relevant to the conduct of litigation by attorneys. The resemblance between the continuous treatment of a condition of a patient by a physician and the continous representation of a client in a lawsuit by an attorney is more than superficial. In both instances the relationship between the parties is marked by trust and confidence; in both there is presented an aspect of the relationship not sporadic but developing; and in both the recipient of the service is necessarily at a disadvantage to question the reason for the tactics employed or the manner in which the tactics are executed." (*Siegel* v. *Kranis* (1968) 29 App.Div.2d 477 [288 N.Y.S.2d 831, 834].)

█ We hold that, so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative. Here, after the appeal became final, the costs on appeal were still in controversy. By their December 20, 1978, and March 23, 1979, letters, defendants manifested their continuing representation of plaintiffs. We find that defendants represented plaintiffs until March 23, 1979, and, therefore, under section 340.6, subdivision (a)(2) the statute of limitations was tolled.

We find support for this interpretation of "representation" when we review several New York cases involving attorney malpractice. In *Citibank* v. *Suthers* (1979) 68 App.Div.2d 790 [418 N.Y.S.2d 679, 681, 682], plaintiffs alleged that up to March 1975 their attorney promised them that he would attempt to correct the situation which was the basis of their legal difficulties. The court held that, if these allegations were proven, the attorney's representation of plaintiffs continued until the March 1975 date.

*Instrument Systems Corp.* v. *Whitman, etc.* (1974) 77 Misc.2d 719 [354 N.Y.S.2d 514] addressed a somewhat different issue—when does a corporate general counsel's representation end when he is dealing with a stock option plan? The New York court found that representation continued at least until the stockholders' meeting at which final approval of the plan was given. At that time the attorney's duty to advise the corporation and its shareholders of the legal effects of the plan ceased. The court then found it unnecesessary to consider whether the continuous representation rule extended to a later time when the attorney ceased to represent the corporation altogether, since plaintiff's suit was timely.

We do not mean to suggest that any contact between an attorney and his client amounts to representation. Had defendants merely forwarded the bill from Security Pacific Title Insurance, that act would not have constituted representation. But here the attorney negotiated with opposing counsel and in fact did effect a reduction in the bill for his client. That contact with opposing counsel amounted to representation.

*Was the One-year, as Well as the Four-year, Provision Tolled?*

Defendant urges that we apply the tolling provisions of section 340.6, subdivision (a) to the four-year limitation only, following the holding of *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93 [132 Cal.Rptr. 657, 553 P.2d 1129], interpreting the medical malpractice statute of limitations, Code of Civil Procedure section 340.5. We do not believe *Sanchez* is an appropriate guide for the present case. The language of section 340.5 is similar but not identical to section 340.6, subdivision (a). Furthermore, *Sanchez* interpreted former section 340.5. That statute read, in pertinent part: "This time limitation shall be tolled for any period during which such person [the treating physician or hospital] has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him." The court, in *Sanchez*, found the phrase "this time limitation" to be ambiguous, but reached the conclusion that it referred to only the four-year-time limit because the contrary interpretation would be "at odds with common sense." The court stated (at p. 98): "Under such a construction, the mere fact of nondisclosure by the physician would suspend indefinitely the period within which plaintiff might elect to bring an action, . . ." even when plaintiff knew or should have known of the alleged malpractice. It would also require a conclusion that the Legislature intended an overhaul of prior case law and abandonment of the common law discovery rule.

Code of Civil Procedure section 340.5 was amended in 1975. The four-year-time period was changed to three years. The clear wording of present section

340.5 is in accord with the *Sanchez* court's holding.[2] The three-year period after date of the injury, during which suit may be brought, is tolled by proof of fraud, intentional concealment or presence of a foreign body having no therapeutic or diagnostic purpose, circumstances which might validly prevent plaintiff from discovering his injury. But once he discovers the injury, he has but one year to bring suit.

The intent of section 340.6, subdivision (a), the legal malpractice statute, is by no means clear. In pertinent part it reads: "In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: (1) The plaintiff has not sustained actual injury; (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation. . . . " If the words "the period" refer only to the four-year limitation, why do the words "except that this subdivision shall toll only the four-year limitation" modify solely subdivision (a)(3) of section 340.6?

■ Absent a single meaning of a statute apparent on its face, we must interpret it based upon the legislative intent with which it was passed. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 256 [104 Cal.Rptr. 761, 502 P.2d 1049].) We look at legislative records to determine legislative intent. (*Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal. App.3d 417, 427 [173 Cal.Rptr. 917].)

Assembly Bill No. 298 (1977-1978 Reg. Sess.) was codified as Code of Civil Procedure section 340.6, subdivision (a). This bill, as originally introduced on January 25, 1977, generally followed the wording of the medical malpractice statute insofar as the sections pertinent to the instant case are concerned. It read: "(a) In any action for damages against an attorney based upon the attorney's alleged professional negligence, the time for the commencement of action shall be three years after the date of the negligent act or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the damage, whichever first occurs. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, or (2) intentional concealment." The bill contained no tolling provisions for continued representation by the attorney or the sustaining of actual injury by the plaintiff.

---

[2] Code of Civil Procedure section 340.5 provides in part: "In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."

Assembly Bill No. 298 was amended on May 9, 1977. The language of subdivision (a) of the amended bill was significantly changed.[3] It began, "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." The tolling section retained the language of the initial bill: "In no event shall the time for commencement of legal action exceed four years unless tolled during the time that any of the following exist: . . ." The tolling provisions, however, had changed significantly. The bill no longer applied to actions based upon fraud. The statute was now tolled (1) during the time plaintiff had not sustained significant injury, (2) while the attorney continued to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred, and (3) when the attorney concealed the wrongful act or omission, but this subdivision limited itself to tolling the four-year period only.[4]

The bill was amended again on May 17, 1977. The words, "unless tolled during the time that any of the following exist" were changed to the words "except that the period shall be tolled during the time that any of the following exist." This wording was adopted in the final form of the bill and codified in Code of Civil Procedure section 340.6, subdivision (a). The legislative counsel's digest of Assembly Bill No. 298 (1977-1978 Reg. Sess.) explained the effect of the bill as follows: "*These periods* would be tolled during the time that the plaintiff has not sustained actual injury, during the time that the attorney still represents the plaintiff in the same matter, or when the plaintiff is under a legal or physical disability. The four-year period would be tolled if the attorney conceals the facts constituting the wrongful act or omission." (Italics added.) ▮ We reach the inescapable conclusion that the Legislature changed these words affecting the tolling provisions in order to clearly toll both the one- and four-year provisions of the statute when the plaintiff sustains no actual injury, while he continues to be represented by the attorney as to the specific subject matter in which the alleged wrongful act or omission occurred, or while he is under a disability referred to in subdivision (4).[5]

---

[3] We note the substantial similarity between the amended bill and a proposal put forth by Ronald E. Mallen in the January/February 1977 issue of the California State Bar Journal. (Mallen, *A Statute of Limitations for Lawyers* (Jan./Feb. 1977) State Bar J., at p. 22.)

[4] Tolling provision (4), referring to possible disabilities of plaintiff and not pertinent to the instant case, was added to the bill at this time.

[5] Those commentators who have reviewed this question have reached this conclusion. (See Witkin, Cal. Procedure (2d ed., 1981 supp. to vol. 2) Actions, § 331C(d), p. 131; Mallen, *An Examination of a Statute of Limitations for Lawyers* (May/June 1978) State Bar J., at pp. 166, 167.)

*Do Plaintiffs Have Authority to Bring Suit on Behalf of the Trust?*

Defendants purport to cross-appeal from that part of the trial court's order which denied summary judgment on grounds that the trustees were no longer authorized to bring suit on behalf of the trust.

■ An order denying a motion for summary judgment is nonappealable. (*Nystrom* v. *First Nat. Bank of Fresno* (1978) 81 Cal.App.3d 759, 763 [146 Cal.Rptr. 711]; see also 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 66, p. 4080.) This attempted cross-appeal is therefore a nullity. However, defendants might properly have included this contention as part of their brief to support the granting of the summary judgment. In the interest of judicial efficiency we shall treat the issue as though they had done so.

■ It is settled law that when the time for termination of a trust arrives, the trustee has those powers and duties appropriate to winding up the trust. (Rest.2d Trusts, § 344.) "There could be no termination of the trust until the trustee's obligations had been performed. . . ." (*Hise* v. *Superior Court* (1943) 21 Cal.2d 614, 625 [134 P.2d 748].) Defendants contend that the instant case falls outside the general rule because (1) the trustors who signed the trust agreement were also the beneficiaries; and (2) the legal malpractice action did not exist at the time the trust was created.

In *Botsford* v. *Haskins & Sells* (1978) 81 Cal.App.3d 780 [146 Cal.Rptr. 752] a trust had been created by two corporations. Legal action was commenced by the trustees after the date set for termination of the trust. The court, after stating that the liquidation of the claims assigned to the trust was a proper function of the trustee, noted that "[i]t would have been wholly unreasonable for the trustee, upon the trusts' termination, to distribute that cause of action to the 500-odd shareholders of the plaintiff corporations. . . ." (*Id.,* at p. 788.) It would have been equally unreasonable to assign the cause of action in the instant case to 56 beneficiaries. In *Botsford,* as in the instant case, the trust agreement executed by the trustors irrevocably assigned to the trustees any cause of action which the trustors may have possessed; the right to sue belonged only to the trustees. (*Id.,* at pp. 783-784.)

Defendants seek to differentiate the instant case from *Botsford* by the fact that the action in question (the legal malpractice suit) arose after the creation of the trust, was not contemplated at the time of the creation of the trust agreement, and indeed did not accrue until the time for termination of the trust had passed. We find no merit to this line of reasoning. The malpractice action arose as part of the trustees' duty to the trust—to effect the most favorable outcome possible for the beneficiaries in all matters having to do with the note which was the res

of the trust. The pursuit of this action was part of the trustees' powers and duties appropriate to winding up the affairs of the trust.

The summary judgment is reversed.

Ashby, J., and Hastings, J., concurred.