**MINDSCAPE, INC., Grolier Interactive, Inc., and Strategic Simulations, Inc., Plaintiffs,**

v.

**MEDIA DEPOT, INC., aka J. & S. Technologies, Inc., Thunder Max Corp., Jimmy Chen, aka Chi–Jen Chen, and Li–May Chen, Defendants.**

### No. C97–01648 BZ.

United States District Court, N.D. California.

July 31, 1997.

---

ORDER DISQUALIFYING THE CHAN LAW GROUP FROM REPRESENTING DEFENDANT THUNDER MAX CORP.

ZIMMERMAN, United States Magistrate Judge.

Plaintiff Mindscape, Inc. ("Mindscape") moves to disqualify the Chan Law Group ("Chan") from defending Thunder Max Corp. ("Thunder Max") in an action for distributing software in violation of copyrights and trademarks plaintiff owns.

From the declarations submitted by both parties, it is undisputed that prior to 1991, Mindscape's predecessor in interest, The Software Toolworks, Inc. ("TST"), retained attorney Mark Jodzeiwiez, then with the firm of Arant Kleinberg & Lerner, to represent the company in applying to the U.S. Patent and Trademark Office ("PTO") for a patent on *The Miracle Teaching System*. After filing the patent application, Mr. Jodzeiwiez left Arant Kleinberg & Lerner to join Chan (renamed Chan & Jodzeiwiez) in August 1991. Mr. Jodzeiwiez brought TST's patent file to Chan and continued prosecuting the *Miracle Teaching System* patent. TST was issued patent number 5,183,398 ("'398 patent") in February 1993.

Mr. Jodzeiwiez left Chan in 1994. TST merged with Mindscape, its wholly-owned subsidiary, in October 1994, changing its name to Mindscape, Inc. Chan continued to represent Mindscape with respect to the '398 patent.

Mindscape filed this action on May 5, 1997. Shortly thereafter, Mindscape learned that Chan would be representing one of the defendants, Thunder Max. Mindscape asked that Chan withdraw from representing Thunder Max, claiming that the California State Bar Rules of Professional Conduct prohibit an attorney from simultaneously representing adverse clients. Chan did not withdraw. On June 17, 1997, Mindscape moved to disqualify Chan from representing Thunder Max.

Every attorney practicing in the Northern District of California must "be familiar with and comply with the standards of professional conduct required of members of the State Bar of California." Civil L.R. 11–3(a). California State Bar Rules of Professional Conduct, Rule 3–310 states, in pertinent part:

> a member shall not, without the informed written consent of each client: ... (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

Cal. St. Bar Rule of Prof. Cond. 3–310(C).

■ California uses two tests in order to determine the circumstances that necessitate disqualification, where an attorney-client conflict of interest exists. *Flatt v. Superior*

*Court,* 9 Cal.4th 275, 283, 36 Cal.Rptr.2d 537, 541, 885 P.2d 950 (1994). First, "where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a 'substantial relationship' between the subjects of the antecedent and current representations." *Id.* at 283, 36 Cal.Rptr.2d 537, 885 P.2d 950. If the requisite substantial relationship does indeed exist, the attorney is per se disqualified from representing the second client. *Id.* at 283, 36 Cal.Rptr.2d 537, 885 P.2d 950. The courts have implemented this test in recognition of the fact that "the chief fiduciary value jeopardized is that of client *confidentiality.*" *Id.* at 283, 36 Cal.Rptr.2d 537, 885 P.2d 950 (emphasis in the original).

■ Second, where an attorney seeks to simultaneously represent adverse clients, the test is more stringent. "Even though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required.*" *Id.* at 284, 36 Cal.Rptr.2d 537, 885 P.2d 950 (emphasis in the original). In cases of simultaneous representation, courts must consider "the attorney's duty—and the client's legitimate expectation—of *loyalty.*" *Id.* at 284, 36 Cal.Rptr.2d 537, 885 P.2d 950 (emphasis in the original). Indeed, "a duty of loyalty to the client forbids any act that would interfere with the dedication of an attorney's 'entire energies to [the] client's interests.'" *Id.* at 289, 36 Cal.Rptr.2d 537, 885 P.2d 950 (quoting *Anderson v. Eaton,* 211 Cal. 113, 116, 293 P. 788 (1930)).

Chan claims that its representation of Mindscape concluded in July 1996, after Chan paid a maintenance fee and filed a Notice of Recordation of Assignment with the PTO, or, at the latest, in November 1996, at the time of Chan's last correspondence to Mindscape. Chan claims that Mindscape retained it to execute specific, successive tasks, which it successfully completed, thereby terminating the attorney-client relationship with Mindscape, and allowing Chan to represent

Thunder Max in litigation that began in this Court on May 5, 1997.

■ This argument is not persuasive. I find that Chan must be disqualified because it has an ongoing relationship with Mindscape. Mindscape employed Chan to change TST's name on the '398 patent to Mindscape. In early May 1997, Mindscape received correspondence from Chan advising Mindscape of the Notice of Recordation of Assignment for a patent which it did not own. Chan had incorrectly recorded Mindscape's name onto a patent for a paper shredder by inserting the wrong patent number in the recordal papers. Supp. Decl. of Zellerbach paras. 2–3, Exhs. A, B. Mindscape noticed the error, and in correspondence to Chan, requested the error be corrected. Opposition Exh. C. According to documents printed from the U.S. Patent data base on Westlaw, Chan's error remains uncorrected. Supp. Decl. of Zellerbach, Exhs. A, B. Chan argues that correcting the mistake would constitute another, separate representation, which it can decline to accept, because Chan has since been retained by Thunder Max. Until Chan completes its task of recording Mindscape's name on the '398 patent, however, Chan has an ongoing relationship with Mindscape. Nor can Chan avoid disqualification by withdrawing from its pre-existing representation of Mindscape. *Truck Ins. Exchange v. Fireman's Fund Ins. Co.,* 6 Cal.App.4th 1050, 1057, 8 Cal.Rptr.2d 228, 232–33 (1992).

Moreover, Mindscape granted power of attorney for the '398 patent to Chan in July 1996, under 37 C.F.R. § 3.73(b). Rose Decl., Exhs. F, I. By executing a Patent Office Power of Attorney, Mindscape designated two Chan attorneys to represent it in all matters relating to the '398 patent. An attorney's relationship with a client is imputed to the entire firm. *Stanley v. Richmond,* 35 Cal.App.4th 1070, 1087–89, 41 Cal.Rptr.2d 768, 776–77 (1995).[1] Chan is listed with the PTO as the addressee for all correspondence. Rose Decl., Exh. F. As the firm of record at the PTO, Chan will be contacted when fees are due or when any other issue arises in

---

1. Though Chan argues that one of the people listed on the '398 patent is only a patent agent, and not an attorney licensed to practice law in California, he is an attorney in Virginia and "of counsel" at Chan. Reply at 4:13–15.

connection with the '398 patent. Plaintiff's Motion at 9:3–9; Reply at 3:7–8. The fact that Chan was granted power of attorney to protect the interests of Mindscape's patent constitutes an ongoing relationship that bars Chan from simultaneously representing Thunder Max in litigation with Mindscape.

■ Under the "simultaneous relationship" test, the subjects of representations need not be similar or related to require disqualification. *Flatt*, 9 Cal.4th at 284, 36 Cal.Rptr.2d 537 at 542, 885 P.2d 950. The fact that the litigation in which Chan represents Thunder Max may be unrelated to Mindscape's '398 patent is not dispositive.

■ Because Chan has yet to correct the mistake on the '398 patent and because of the power of attorney granted to Chan for the '398 patent, an attorney-client relationship exists between Mindscape and Chan. "So long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative." *Gurkewitz v. Haberman*, 137 Cal.App.3d 328, 333, 187 Cal.Rptr. 14, 17 (1982). Significantly, Chan never advised Mindscape that it considered its representation terminated.

Pursuant to the local rules, California State Bar Rules of Professional Conduct, and case authority, Chan cannot, in good conscience, simultaneously represent two adverse parties. To preserve the loyalties Chan has assumed in representing Mindscape and its patent, plaintiff's motion to disqualify Chan from representing Thunder Max is hereby GRANTED.